**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Martinsburg**


**JOSEPH NOLAN**, **ERIC WOOMER**,
**CARLA COBLE**, **STEPHANIE LAING**,
and **POPPY CHRISMAN**, individually
and as Class Representatives,

        Plaintiffs,

    v.                                      **Civil Action NO. 3:08-CV-62
Judge Bailey**

**RELIANT EQUITY INVESTORS, LLC**,
a foreign limited liability company,
**TATUM, LLC**, a foreign limited liability
company, **BLUESKY BRAND, INC.**,
a foreign corporation, **RICHARD HEBERT**,
**CATHY JO VAN PELT**, **KIMBERLY
MYERS**, **MICHAEL LUTZ** and **LARRY MUZZY**,

        Defendants.


**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFFS' MOTION AND MEMORANDUM FOR CLASS CERTIFICATION**

Pending before this Court is Plaintiffs' Motion and Memorandum for Class

Certification (Doc. 73).  The Motion has been fully briefed, oral argument heard, and is now

ripe for decision.  For the reasons hereinafter stated, this Court will **GRANT** the Motion.

This case emanates from the sudden, simultaneous closing of three facilities owned

by AB&C Group, Inc. on or about March 14, 2008.  While AB&C Group, Inc. has been

involuntarily placed in bankruptcy[1], the plaintiffs seek recovery over other entities as the *de*

---

[1]The bankruptcy of AB&C Group, Inc. has complicated discovery in this case,
inasmuch as  the records company are on computer and under the control of the Trustee.

1

*facto* employers of the plaintiffs and other employees of AB&C Group, Inc.

In the Motion, the plaintiffs seek to have two classes certified. First, the plaintiffs seek a class under Rule 23(b)(3) on the plaintiffs' cause of action under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, *et seq.* Second, the plaintiffs seek a collective action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

### Rule 23(b)(2) Class

"Class certification is strictly a procedural matter, and the merits of the claims at stake are not to be considered when deciding whether to certify a class. ***Eisen v. Carlisle & Jacquelin***, 417 U.S. 156, 177 (1974)." ***Hewlett v. Premier Salons International, Inc.***, 185 F.R.D. 211, 214 (D. Md. 1997). "A district court has broad discretion in deciding whether to certify a class." ***Thorn v. Jefferson-Pilot Life Ins. Co.***, 445 F.3d 311, 317 (4th Cir. 2006), quoting ***Lienhart v. Dryvit Sys., Inc.***, 255 F.3d 138, 146 (4th Cir. 2001).

"[P]laintiffs bear the burden ... of demonstrating satisfaction of the Rule 23 requirements and the district court is required to make findings on whether the plaintiffs carried their burden. . .." ***Thorn***, *supra,* quoting ***Gariety v. Grant Thornton, LLP,*** 368 F.3d 356, 370 (4th Cir. 2004).

Furthermore, a district court is to conduct a "rigorous analysis" to ensure compliance with Rule 23, paying careful attention to the requirements of the Rule. ***Thorn***, *supra* at 318; ***Gariety v. Grant Thornton, LLP***, 368 F.3d 356, 365 (4th Cir. 2004). *See* ***Brown v. Nucor***, __ F.3d __ , No. 081247 (4th Cir. August 7, 2009).

In ***Gariety***, the Fourth Circuit has set forth the requirements for class certification:

A district court may, in its discretion, order that an action proceed as a class

2

action only if it finds that the requirements of Federal Rule of Civil Procedure 23 have been satisfied. Every class action must satisfy the four requirements of Rule 23(a)-numerosity, typicality, commonality, and adequacy of representation, with "the final three requirements ... 'tend[ing] to merge.'" ***Broussard v. Meineke Disc. Muffler Shops, Inc.,*** 155 F.3d 331, 337 (4th Cir. 1998) (quoting ***Gen. Tel. Co. of the Southwest v. Falcon***, 457 U.S. 147, 157, n. 13 (1982)). In addition, a proposed class must also satisfy the requirements of one of the three Rule 23(b) categories. In this case, the plaintiffs requested certification of the class under Rule 23(b)(3), which requires the court to find (1) that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" (the predominance requirement), and (2) that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy" (the superiority requirement). Rule 23(b)(3)'s predominance requirement is "far more demanding" than Rule 23(a)'s commonality requirement and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." ***Amchem Prods., Inc. v. Windsor***, 521 U.S. 591, 623-24 (1997).

368 F.3d at 362.

Upon this background, this Court will analyze the various required factors.

## I.    Numerosity

The first requirement of Rule 23(a) is that the class must be of such a size that

joiner of all members is impracticable. "'Impracticable does not mean impossible.' **Robidoux v. Celani**, 987 F.2d 931, 935 (2d Cir. 1993). Practicability of joinder depends on factors such as the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion. **Buford** [**v. H & R Block, Inc.**], 168 F.R.D. at 348 (citing **Kilgo v. Bowman Transp., Inc.**, 789 F.2d 859, 878 (11th Cir. 1986)). The size of individual claims is another factor to consider; where individual claims are so small as to inhibit an individual from pursuing his own claim, joinder is less likely. **Id.** (citing **Luyando v. Bowen**, 124 F.R.D. 52, 55 (S.D. N.Y. 1989))." **Hewlett v. Premier Salons International, Inc.**, 185 F.R.D. 211, 215 (D. Md. 1997).

"There is no bright line test for determining numerosity; the determination rests on the court's practical judgment in light of the particular facts of the case. [**Buford v. H & R Block, Inc.**, 168 F.R.D. 340, 348 (S.D. Ga. 1996)] (citing **Deutschman v. Beneficial Corp.**, 132 F.R.D. 359, 371 (D. Del. 1990)). The class representatives are not required to specify the exact number of persons in the proposed class. **Kernan v. Holiday Universal, Inc.**, 1990 WL 289505, *2 (D. Md. 1990) (citing **Marcial v. Coronet Ins. Co.**, 880 F.2d 954, 957 (7th Cir. 1989)). An unsubstantiated allegation as to numerosity, however, is insufficient to satisfy Rule 23(a)(1). **Buford**, 168 F.R.D. at 348 (citing **Zeidman v. J. Ray McDermott & Co.**, 651 F.2d 1030, 1038 (5th Cir. 1981))." **Id.**

In this case, the plaintiffs have offered little evidence of numerosity, relying on an order issued by the Circuit Court of Jefferson County, West Virginia, in **Coble v. Reliant Equity Investors**, Civil Action No. 08-C-359, finding that the Berkeley County and

Jefferson County locations employed at least 375 individuals at the time that the plants were closed on March 14, 2008. The defendants argue that this information is not relevant, since "the plaintiffs have failed to offer any evidence regarding the number of former employees that might be potential class members in this case." This Court cannot find any distinction.

In the state court case, the class consists of those persons who were employed at the AB&C Group facilities in Jefferson and Berkeley Counties at the time that they were terminated on March 14, 2008. The members of the state court class would be the same members of the class for which certification is sought in this Court. In oral argument, the defendants argued that the WARN Act only covers full-time employees, as opposed to part-time employees. While only full-time employees are considered in determining whether a business enterprise is an "employer" covered under the Act, 29 U.S.C. § 2101(a)(1)(A),[2] there is no such limitation placed on who is an "affected employee."

Accordingly, if the plaintiffs prevail on their claim that the defendants violated the WARN Act, all of the employees, whether part-time or full-time, who lost their jobs on March 14, 2008, will be entitled to recover. It logically follows, then, that the number of employees who were employed immediately prior to the closing is the determinative number.

While it is true that the 375 employee number does not include the employees of the Orange County, Virginia, facility, the inclusion of those employees can only increase the size of the class. Furthermore, given the fact that each plaintiff can, at the most, recover

---

[2] In fact, part-time employees are counted in determining whether a business entity is an "employer" under 29 U.S.C. § 2101(a)(1)(B).

sixty (60) days' wages, the size of the potential recovery militates in favor of class certification.

In making the determination as to numerosity, this Court is entitled to make common sense assumptions. *Hewlett v. Premier Salons International, Inc.*, 185 F.R.D. at 215. Based upon the foregoing, this Court finds that the plaintiffs have satisfied the requirement of numerosity.

## II.  Commonality

Under Rule 23(a), the "inquiry is not whether common questions of law or fact predominate, but only whether such questions exist." *Hewlett, supra* at 216. Minor differences in the underlying facts of individual class members' cases do not defeat a showing of commonality where there are common questions of law. *Id.*

In this case, there are at least three common questions of fact and law. First, whether AB&C Group was subject to the requirements of the WARN Act. Second, whether the appropriate WARN notice was given. Third, whether the defendants are legally liable for the alleged violation.

Accordingly, this Court finds that the commonality factor is satisfied.

## III.  Typicality

"Typicality requires that the claims of the named class representatives be typical of those of the class; 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Leinhart v. Dryvit Systems, Inc.,* 255 F.3d 138, 146 (4th Cir. 2001), quoting *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 156 (1982) (internal quotation marks omitted).

"[T]o satisfy the typicality requirement, the named representatives' claims must have the same essential characteristics as the claims of the purported class. *Tipton v. Secretary of Educ.,* 1992 U.S. Dist. LEXIS 22797 *24 (S.D. W.Va) (quoting *De La Fuente v. Stokely Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983))." *Westfall v. Kendle International, CPU, LLC*, 2007 WL 486606, *14 (N.D. W.Va. Feb. 15, 2007).

"Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. *Zapata* [*v. IBP, Inc.*], 167 F.R.D. at 160 (citing 1 *Newberg on Class Actions* § 3.13). . . . So long as the plaintiffs and the class have an interest in prevailing in similar legal claims, then the typicality requirement is satisfied. *Buford* [*v. H & R Block, Inc.*], 168 F.R.D. at 351 (citing *Meyer v. Citizens and Southern Nat'l Bank,* 106 F.R.D. 356, 361 (M.D. Ga. 1985))." *Hewlett, supra* at 217.

This Court finds that the representative plaintiff satisfies this requirement. As one of many who lost their jobs on March 14, 2008, the plaintiff suffered the same injury as did the other employees. Accordingly, the typicality requirement is satisfied.

## IV.    Adequacy of Representation

"To adequately represent the class, the 'class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members.' *Amchem Products, Inc.,* 521 U.S. at 625-26 (quoting *East Tex. Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977))." *Westfall, supra* at *14.

"Representativeness require that the class representatives 'will fairly and adequately protect the interests of the class.'" *Lienhart, supra* at 146-47.

7

"Courts have broken down the requirement into an evaluation of (1) whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether the representative's claims are sufficiently interrelated to and not antagonistic with the class's claims as to ensure fair and adequate representation. ***Buford***, 168 F.R.D. at 351 (citing ***Griffin v. Carlin***, 755 F.2d 1516, 1533 (11th Cir. 1985)); ***Zapata***, 167 F.R.D. at 160 (citing ***Falcon***, 457 U.S. at 157 n. 13))." ***Hewlett***, *supra* at 218.

This Court finds that the representatives claims in seeking redress for the alleged WARN Act violation are sufficiently interrelated with the claims of the purported class. In fact, they are identical. There is no indication that the proposed representative has any claims which are antagonistic to the claims of the proposed class.

"In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to prosecute vigorously the action on behalf of the class." ***Hewlett***, *supra* at 218, citing ***Zapata***, 167 F.R.D. at 161.

Furthermore, in this case, the defendants have stated that they do not contest the competence and experience of counsel for the plaintiff to prosecute vigorously the action on behalf of the class. Accordingly, this Court finds that the plaintiff has satisfied the requirement of adequacy of representation.

## IV.    23(b)(3) Requirements

In addition to satisfying the four requirements of Rule 23(a), the plaintiff must satisfy the requirements of Rule 23(b)(3). "In contrast to actions under Rule 23(b)(1) and (b)(2), Rule 23(b)(3) actions are '[f]ramed for situations in which class-action treatment is not

clearly called for,' but 'may nevertheless be convenient and desirable.' ***Amchem Prods., Inc. v. Windsor***, 521 U.S. 591, 615 (1997) (internal quotation marks omitted). In addition to the four Rule 23(a) requirements, Rule 23(b)(3) actions such as this one must meet two requirements: predominance and superiority. Predominance requires that '[common] questions of law or fact ... predominate over any questions affecting only individual members.' Fed.R.Civ.P. 23(b)(3). The predominance inquiry 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." ***Amchem***, 521 U.S. at 623. Superiority requires that a class action be 'superior to other methods for the fair and efficient adjudication of the controversy.' Fed.R.Civ.P. 23(b)(3)." ***Lienhart***, *supra* at 147.

"Rule 23(b)(3)'s predominance requirement is 'far more demanding' than Rule 23(a)'s commonality requirement and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.' *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623-24 (1997)." ***Gariety v. Grant Thornton, LLP***, 368 F.3d 356, 362 (4th Cir. 2004).

"The predominance requirement is similar to but 'more stringent' than the commonality requirement of Rule 23(a). ***Lienhart***, 255 F.3d at 146 n. 4. Whereas commonality requires little more than the presence of common questions of law and fact, *see **id**.* at 146, Rule 23(b)(3) requires that 'questions of law or fact common to the members of the class predominate over any questions affecting only individual members.' Fed.R.Civ.P. 23(b)(3)." ***Thorn v. Jefferson-Pilot Life Ins. Co.***, 445 F.3d 311, 319 (4th Cir. 2006).

"Rule 23(b)(3) provides that an action may be maintained as a class action if, in addition to meeting the prerequisites of Rule 23(a), the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. These requirements are generally referred to as predominance and superiority. 'Although easy to state, these prerequisites become rather opaque when an attempt is made to apply them. . .. The truth is that if one reads fifty or even a hundred cases involving predominance and superiority, a clear picture of what is happening under Rule 23(b)(3) does not emerge. A DaVinci or Michaelangelo could not draw a straight line through the subdivision (b)(3) cases.' *Buford,* 168 F.R.D. at 355 (quoting Miller, *An Overview of Federal Class Actions* 48)." *Hewlett, supra* at 219.

"In determining whether the predominance standard is met, courts focus on the issue of liability. *Zapata,* 167 F.R.D. at 165 (citing *Gold Strike Stamp Co. v. Christensen,* 436 F.2d 791, 796 (10th Cir. 1970); *United Telecommunications, Inc. Sec. Lit.,* 1992 WL 309884, *3 (D. Kan. 1992)). If the liability issue is common to the class, common questions are held to predominate over individual ones. Where, however, the issue of liability turns on something peculiar to the individual plaintiffs, such as the plaintiffs' responses or states of mind, then common questions have been held not to predominate." *Hewlett, supra* at 220.

As previously noted, with respect to liability the common issues of fact and law are common. First, whether AB&C Group was subject to the requirements of the WARN Act. Second, whether the appropriate WARN notice was given. Third, whether the defendants

are legally liable for the alleged violation.  With respect to liability, there are no issues that are not common.  Accordingly, this Court finds that the common issues predominate over any individual issues.

While the Fourth Circuit has held that the need for individualized proof of damages may defeat predominance where proof of damages is essential to liability, **Lienhart***, supra* at 147 (citing **Windham v. American Brands***,* 565 F.2d 59, 66 (4th Cir. 1977)), "[i]f the computation of damages following a ruling in favor of the class is largely a mechanical task, then the existence of individualized claims for damages seems to offer no barrier to class certification." **Hewlett***, supra* at 220, also citing **Windham v. American Brands, Inc.***,* 565 F.2d 59, 68 (4th Cir. 1977), *cert. denied,* 435 U.S. 968 (1978).

Based upon the foregoing, this Court finds the predominance requirement to be satisfied.

"The superiority requirement ensures that 'a class action is superior to other available methods for the fair and efficient adjudication of the controversy.'  Fed.R.Civ.P. 23(b)(3).  Among the factors a district court should consider in deciding whether a class action meets these two requirements are

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

***Thorn***, *supra* at 319.

An application of these factors to this case militates in favor of certification of a class. Due to the relatively small recovery that would be available to individual plaintiffs, assuming that they prevail on the merits, this Court does not believe that they have any vested interest in maintaining a separate action. While there is a class action in state court involving the same or similar class for a violation of the West Virginia Wage Payment and Collection Act, West Virginia Code § 21-5-1 *et seq.*, this Court has not been made aware of any other WARN Act litigation involving these defendants. This Court further finds it desirable to concentrate the litigation in this judicial district, where two of the three facilities were located and where the majority of the class members would presumably reside. With respect to difficulties to be encountered in management of the class action, this Court finds there to be none other than the typical issues of language of the notice and provision of the notice to class members.

This Court also notes that other courts have found WARN Act cases to be amenable to class litigation. ***Finnan v. L.F. Rothschild & Co., Inc.***, 726 F.Supp. 460, 465 (S.D. N.Y. 1989) ("The WARN Act seems particularly amenable to class litigation."); ***In re Protected Vehicles, Inc.***, 397 B.R. 339, 343-44 (Bankr. D. S.C. 2008) (same); ***Gomez v. American Garment Finishers Corp.***, 200 F.R.D. 579, 585 (W.D. Tex. 2000) (same); ***Kelly v. SabreTech, Inc.***, 195 F.R.D. 48, 54 (S.D. Fla. 1999) (same); ***Cashman v. Dolce Intern./Hartford, Inc.***, 225 F.R.D. 73, 90 (D. Conn. 2004) (same); ***Cruz v. Robert Abbey, Inc.***, 778 F.Supp. 605, 612 (E.D. N.Y. 1991) ("a class action is the superior method for adjudicating the plaintiffs' [WARN] claims.").

Accordingly, this Court finds that the superiority requirement has been satisfied. This Court will certify a Rule 23(b)(3) class consisting of all individuals who worked at the AB&C Group facilities in Jefferson and Berkeley Counties, West Virginia, and Orange County, Virginia, and who lost their jobs when the facilities closed in March, 2008.

### 29 U.S.C. § 216(b) Collective Action

As noted above, the plaintiffs also seek a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* "The FLSA provides for a collective action by plaintiffs who are 'similarly situated.' See 29 U.S.C. § 216(b); *Hoffman* [*v. Sbarro*], 982 F.Supp. at 263. In these actions, courts limit their evaluation to whether named and 'opt-in' plaintiffs are 'similarly situated.'" *Westfall v. Kendle Intern., CPU, LLC*, 2007 WL 486606, *8 (N.D. W.Va. Feb. 15, 2007).

"Generally, a plaintiff may more easily obtain certification of a § 216(b) collective action than a Rule 23 class action because plaintiffs in a § 216(b) action are not held to the requirements of Rule 23 certification. *See Hoffman,* 982 F.Supp. at 263; *Heagney v. European Am. Bank,* 122 F.R.D. 125, 127 (E.D. N.Y. 1988)." *Id.*

"Section 216(b) does not define 'similarly situated,' and neither the Fourth Circuit nor the West Virginia district courts have clearly defined the term in the context of FLSA claims. However, courts generally use a two-step approach to certify FLSA collective actions. *See Scott v. Aetna Servs., Inc.,* 210 F.R.D. 261, 264 (D. Conn. 2002) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207 (5th Cir. 1995)); *Schwed v. G.E. Co.,* 159 F.R.D. 373 (N.D. N.Y. 1995); *Lusardi v. Xerox Corp.,* 122 F.R.D. 463 (D. N.J. 1988). In the first phase of the inquiry, the court must examine the pleadings and affidavits of the proposed

action and determine whether the proposed action members are similarly situated enough to conditionally certify the collective action. *Scott*, 210 F.R.D. at 264. Generally after the conditional certification, the court gives putative class members notice and the opportunity to 'opt-in' and the action proceeds as a representative action throughout discovery. *Id.*" *Id.*

"The second phase of the inquiry, undertaken after discovery is largely completed, 'is typically precipitated by a motion for "decertification" by the defendant.' *Id.* (quoting *Mooney*, 54 F.3d at 1214). If at this point the court finds that the claimants are similarly situated, the action proceeds to trial. *Id.* If the court finds that the claimants are not similarly situated, the court decertifies the action and dismisses the 'opt-ins' without prejudice. *Id.* The class representative can then proceed to trial with his individual claims. *Id*." *Id.*

"While courts have not applied a uniform test to determine the definition of 'similarly situated,' a 'modest factual showing' usually suffices. *See Realite v. Ark Restaurants Corp.,* 7 F.Supp.2d 303, 306 (S.D. N.Y. 1998). A conditional action should be certified under § 216(b) if the moving plaintiffs show 'that putative class members were together the victims of a single decision, policy, or plan that violated the law.' *Reeves v. Alliant Techsystems, Inc.,* 77 F.Supp.2d 242, 247 (D. R.I. 1999) (internal citations and quotation marks omitted). In *Lee v. ABC Carpet & Home,* 236 F.R.D. 193, 197 (S.D. N.Y. 2006), the court defined similarly situated as a test examining the existence of 'a "factual nexus" between the claims of the named plaintiff and those who have chosen to opt-in to the action.'" *Id.*

In this case, based upon the complaint and the interrogatory answers filed in connection with the Motion, the plaintiffs contend that they were required to "log-in" on their computers in advance of their starting times so that they were able to begin work as soon as their shift began, but were required to conduct this log-in "off the clock."[3]  As a result of this policy, the plaintiffs claim entitlement to unpaid overtime.

In this case, the putative members of the collective action claim that they were together the victims of a single policy that violated the law.

Accordingly, this Court will conditionally certify a collective action for the FLSA claim, consisting of all individuals who were employed full time as call center operator at AB&C Group, Inc., facilities in Jefferson and Berkeley Counties, West Virginia, and Orange County, Virginia, at any time between March 14, 2005, and March 14, 2008, and were required to perform work for which they were not paid.

This Court has modified the proposed notice to potential class members which is **attached hereto**.  Either party may submit comments and/or criticisms of the proposed notice within ten days of the entry of this Order.

Based upon the foregoing, the Plaintiffs' Motion and Memorandum for Class Certification **(Doc. 73)** is **GRANTED**.

It is so **ORDERED**

The Clerk is directed to transmit copies of this Order to counsel of record herein.

---

[3] Defendant Reliant Investors has filed a Motion to Strike Affidavit of Amanda Miller in Support of Plaintiffs' Motion and Memorandum for Class Certification (Doc. 106).  While this Court has not ruled upon the Motion, it did not consider the Miller affidavit in deciding this issue.

**DATED:** August 10, 2009.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**Martinsburg**


**JOSEPH NOLAN, et al.,**

        **Plaintiffs,**

    **v.**                           **Civil Action No. 08-cv-0062-JPB**
                                            **Judge Bailey**

**RELIANT EQUITY INVESTORS,**
**LLC, et al.,**

        **Defendants.**


### IMPORTANT NOTICE

**TO:**    **EVERYONE WHO WORKED AT THE AB&C GROUP, INC. FACILITIES IN BERKELEY COUNTY, WV, JEFFERSON COUNTY, WV AND ORANGE COUNTY, VA.**

You may be a member of one or both of the plaintiff classes in this class action lawsuit. This lawsuit is about the closure of the AB&C Group facilities in Berkeley County, WV, Jefferson County, WV, and Orange Co., VA, in March, 2008, without any prior notice. It also is about allegations that some workers at these facilities were required or permitted to work "off the clock," and as a result were not paid overtime due to them for some pay periods.

If you are a former worker at any of the AB&C Group, Inc. facilities in Berkeley County, WV, Jefferson County, WV, and Orange Co., VA, you should read this notice because it could affect your legal rights.

THIS NOTICE IS NOT AN EXPRESSION OF ANY OPINION BY THE COURT AS TO THE MERITS OF ANY OF THE CLAIMS OR DEFENSES ASSERTED BY EITHER SIDE IN THIS LITIGATION. THE SOLE PURPOSE OF THIS NOTICE IS TO INFORM YOU OF THE LAWSUIT SO THAT YOU CAN MAKE AN INFORMED DECISION ABOUT WHETHER YOU WANT TO PARTICIPATE IN THIS CLASS ACTION LAWSUIT.

### BACKGROUND OF THE CASE

The individual former employees of AB&C Group, Inc. started this lawsuit in March, 2008. The brought the lawsuit on behalf of themselves, and on behalf of all former employees. They allege that the defendants in this case were, as a matter of law, statutory

employers of the workers at AB&C Group, Inc. The plaintiffs allege that the defendants violated two laws, giving rise to two distinct claims, each of which is described below.

### GROUP ONE – "OPT-OUT" CLAIM UNDER THE WARN ACT

In this Group One "Opt-Out" claim, the plaintiffs allege that the defendants were required by the Worker Adjustment and Retraining Notification Act (the "WARN Act"), 29, U.S.C. §§ 2101 through 2109, to provide the AB&C Group, Inc. employees written, advance warning that the business would close. Plaintiffs allege that the defendants did not provide the written notice, and so violated the WARN Act. Defendants deny that they did anything wrong.

The class consists of all individuals who worked at the AB&C Group facilities in Jefferson and Berkeley Counties, West Virginia, and Orange County, Virginia, and who lost their jobs when the facilities closed in March, 2008.

### GROUP TWO – "OPT-IN" CLAIM.

In this Group Two "Opt-In" claim the plaintiffs allege that workers at AB&C Group, Inc. were either required or permitted to work "off the clock" for some periods of time. Plaintiffs allege that as a result of this practice, some employees worked overtime for which they were not paid, in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*

The class consists of all individuals who were employed full time as call center operators at AB&C Group, Inc., facilities in Jefferson and Berkeley Counties, West Virginia, and Orange County, Virginia, at any time between March 14, 2005, and March 14, 2008, and were required to perform work for which they were not paid.

### STATUS OF THE CASE

A trial of both the Group One and Group Two claims is currently scheduled to begin on January 12, 2010, at the Federal Courthouse in Martinsburg, West Virginia.

### A. GROUP ONE – "OPT-OUT" WARN ACT CLAIM

The Court has certified a plaintiff class for the GROUP ONE CLAIM, brought under the WARN Act, which is described above. This means that you are deemed to be a ***class member*** in this case ***unless*** you exercise your right to "opt-out" of this case by signing and returning the enclosed ***gray*** "OPT-OUT" postcard, postmarked on or before _____, 2009.

***If you do NOT return the gray GROUP ONE CLAIM OPT-OUT card on or before _____, 2009, you will be included as a class member and the following will***

*apply to you:*

1.  You will be represented by the class representatives listed above and the lawyers at Hammer, Ferretti & Schiavoni, and by Garry G. Geffert, Attorney at Law.

2.  You will receive notice of any ruling affecting the size of the class and notice of any proposed settlement or dismissal of class claims or of any judgment rendered by the Court.  However, you may enter an appearance through another attorney by mailing a Notice of Appearance to the Clerk of the Court at the address set out below.   If you wish to enter an appearance through your own counsel, you must do so by notice filed on or before _____, 2009.

3.  You will be bound by any judgment or final disposition of the class lawsuit, whether that disposition is favorable or unfavorable.

4.  You will participate in a distribution of any damages recovered in the litigation.

**YOU SHOULD RETAIN ALL RECORDS AND DOCUMENTS PERTAINING TO THE SUBJECT MATTER OF THIS CASE.**

*If you return the gray card, you will be excluded from the GROUP ONE class claims and the following will apply to you:*

1.  You will not be bound by any disposition of the class action and you will retain any claims you may have against the defendants.  However, you may lose part or all of your claims due to the passage of time.

2.  You will not share in any recovery which might be paid to class members from any settlement, or from any judgment if the class representatives are successful at trial.

When deciding whether you want to be excluded from the GROUP ONE class claims, you are advised to consult your own attorney as there are legal issues which require consideration.

**B.     GROUP TWO – "OPT-IN" FLSA CLAIM**

The Court has certified a plaintiff class for the GROUP TWO CLAIM, brought under the FLSA, described above.  The GROUP TWO "OPT-IN" claim is much different from the GROUP ONE "OPT-OUT" CLAIM.   Unlike the "Opt-Out" claim, for which you are automatically included as a class member unless your "Opt-Out," the GROUP TWO "OPT-IN" claim requires that you request to be included as a class member.  You must file the

request to be included in writing.  If you do not request to be included in the GROUP TWO class, you will not be included as a class member with respect to the GROUP TWO claim for overtime under the FLSA.

To request inclusion as a GROUP TWO class member, you must sign and return the enclosed **white** "OPT-IN" postcard, postmarked on or before _____, 2009.

*If you return the white **GROUP TWO CLAIM OPT-IN** card on or before _____, 2009, you will be included as a class member and the following will apply to you:*

1.	You will be represented by the class representatives listed above and the lawyers at Hammer, Ferretti & Schiavoni, and by Garry G. Geffert, Attorney at Law.

2.	You will receive notice of any ruling affecting the size of the class and notice of any proposed settlement or dismissal of class claims or of any judgment rendered by the Court.  However, you may enter an appearance through another attorney by mailing a Notice of Appearance to the Clerk of the Court at the address set out below.   If you wish to enter an appearance through your own counsel, you must do so by notice filed on or before _____, 2009.

3.	You will be bound by any judgment or final disposition of the class lawsuit, whether that disposition is favorable or unfavorable.

4.	You will participate in a distribution of any damages recovered in the litigation.

**YOU SHOULD RETAIN ALL RECORDS AND DOCUMENTS PERTAINING TO THE SUBJECT MATTER OF THIS CASE.**

*If you do NOT return the white card, you will be excluded from the GROUP TWO class claims and the following will apply to you:*

1.	You will not be bound by any disposition of the class action and you will retain any claims you may have against the defendants.  However, you may lose part or all of your claims due to the passage of time.

2.	You will not share in any recovery which might be paid to class members from any settlement, or from any judgment if the class representatives are successful at trial.

When deciding whether you want to be excluded from the GROUP TWO class claims, you are advised to consult your own attorney as there are legal issues which

require consideration.

## NOTICE OF ATTORNEYS OF RECORD

By Order of the Court, the following attorneys are designated as plaintiff class counsel:

David M. Hammer                     Garry G. Geffert
Robert J. Schiavoni                 114 S. Maple Avenue
Hammer, Ferretti & Schiavoni        P.O. Box 2281
401 W. King Street                  Martinsburg, WV 25402
Martinsburg, WV 25401               (304) 262-4436
(304) 264-8505                      Email: geffert@wvdsl.net
Email: dhammer@hfslawyers.com

## CHANGE OF ADDRESS

If you move after receiving this notice, or if it was incorrectly addressed, you should supply your correct name and address to the offices of Hammer, Ferretti & Schiavoni, which is listed above. This is important so that future notices will reach you.

## MISCELLANEOUS

The pleadings and all other records of this litigation may be examined and copied any time during regular office hours in the office of the Clerk of the Court. The Clerk's name and address are:

Ms. Cheryl Dean Riley, Clerk
U.S. District Court
Room 102
217 West King Street
Martinsburg, WV 25401

IF YOU HAVE ANY QUESTIONS OR CONCERNS, ADDRESS ALL INQUIRIES TO THE ATTORNEYS FOR THE CLASS, WHO ARE NAMED ABOVE. THE COURT AND THE CLERK ARE NOT PERMITTED TO ANSWER LEGAL QUESTIONS.

**DATED**: August 10, 2009.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE