1

```
 1                  UNITED STATES DISTRICT COURT

 2         NORTHERN DISTRICT OF WEST VIRGINIA (MARTINSBURG)

 3

 4    JOSEPH NOLAN, ERIC WOOMER,       *DOCKET NO. 3:08-CV-62

 5    CARLA COBLE, STEPHANIE LAING, and  *

 6    POPPY CHRISMAN,                  *

 7           Plaintiffs               *

 8    vs.                             * Martinsburg, WV

 9    RELIANT EQUITY INVESTORS, LLC,   * July 24, 2009

10    a foreign limited liability company*

11    TATUM, LLC, a foreign limited    *

12    A B & C GROUP, Inc., a foreign   *

13    corporation, and BLUESKY BRANDS,  *

14    INC., a foreign corporation, and  *

15    the following individuals:  RICHARD*

16    HERBERT, CATHY JO VAN PELT,      *

17    KIMBERLY MYERS, MICHAEL LUTZ and  *

18    LARRY MUZZY,                     *

19           Defendants               *

20

21             VIDEO CONFERENCE HEARING TRANSCRIPT

22            BEFORE THE HONORABLE JOHN P. BAILEY

23                UNITED STATES DISTRICT JUDGE

24

25
```

1

2

3    APPEARANCES:

4    For the Plaintiffs:          Garry Geffert, Esq.

5                                  David Hammer, Esq.

6                                  Martinsburg, WV 25401

7    For the Defendants:          Craig Boggs, Esq.

8                                  Chicago, IL 60603

9                                  Glenn Hare, Esq.

10                                 Martinsburg, WV 25401.

11

12   Court Reporter:              Terry Hamrick, RMR, CRR

13                                Official Reporter

14

15   Proceedings reported by means of mechanical stenography,

16   transcribed utilizing computer-aided transcription.

17

18

19

20

21

22

23

24

25

3

1

2                      I N D E X :

3                                          Page_No.

4

5    Argument of counsel on motions            4

6

7    Reporter's Certificate                    33

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Video conference proceedings in open court with

2     Judge Bailey participating via video.)

3          THE COURT:  I would ask the clerk to call the

4     case, please?

5          THE CLERK:  This is the case of Joseph Nolan, et

6     al. versus Reliant Equity Investors, LLC, et al.  Civil

7     Number 3:08-CV-62.

8        Will the parties please note your appearance for the

9     record?

10          MR. GEFFERT:  Garry Geffert for the plaintiffs.

11          MR. HAMMER:  David Hammer here for the

12     plaintiffs.

13          MR. BOGGS:  Craig Boggs on behalf of defendant

14     Reliant Equity Investors.

15          MR. HARE:  Glenn Hare, also on behalf of Reliant

16     Equity.

17          MR. POWELL:  Bill Powell on behalf of Tatum,

18     LLC.

19          THE COURT:  Gentlemen, can you speak into the

20     mikes?

21        All right, we're here on plaintiffs' motion to certify

22     a class, which is really two classes; one opt-out class

23     under Rule 23, and a Fair Labor Standards Act opt-in class

24     for group under 29 USC 216(b).  I think probably for

25     analysis purposes we need to start with the Rule 23

```
1    factors.  Numerosity, commonality, typicality, and

2    adequate representation.  And I would like to go through

3    each of those factors, but I'm a little concerned

4    that--maybe there's a little bit of quibbling going on

5    here.  Who is speaking today for the Reliant?

6              MR. BOGGS:  I am, Your Honor, Craig Boggs.

7              THE COURT:  All right, Mr. Boggs, would you go

8    to the podium, please?

9              MR. BOGGS:  Sure.

10             THE COURT:  First, is there really any issue

11   with regard to numerosity?

12             MR. BOGGS:  Your Honor, I guess the answer to

13   that is, I don't know.  As you probably know, Reliant

14   Equity Investors was not the employer, they were an

15   investment advisor to a fund that owned numerous portfolio

16   companies, including Bluesky, which, in turn, owned A B &

17   C.  So we have very few facts surrounding the

18   circumstances.  And, you know, frankly my guess is that

19   there may not be, Your Honor, but I don't know that and

20   can't really concede that point because we don't know that

21   because there is no evidence.  And I think that is our

22   principal point.  That in order for there to be a ruling

23   on class certification under Rule 23, there has to be

24   submission of evidence.

25        And, Your Honor, I think that one of the issues is--we
```

1    know, or have a sense at least, based on some testimony

2    that came out in recent depositions and also in connection

3    with the--another class that had been certified in the

4    state court matter, the approximate number of total

5    employees.  We don't have any sense of whether those

6    employs are full-time or part-time, which is a very

7    significant issue under WARN, while it is not an issue

8    under the Wage Payment and Collection action in state

9    court.

10    We also don't have any knowledge about where the

11    employees were working.  Which site.  And there's three

12    locations.  As Your Honor may know, a Berkeley County

13    location, a Jefferson County location, and then an Orange

14    County, Virginia location.  And the number of employees at

15    those particular locations, and the number of those

16    employees that are either part-time or full-time, or

17    whether they had worked more than six months in the

18    preceding 12 months prior to the time the WARN notice was

19    due.  There is no evidence on any of those issues either.

20    So, with all due respect, and I understand that we

21    have a sense of what the number of employees, Your Honor,

22    is, I don't think that we know that based on the

23    information that the plaintiffs' lawyers have submitted

24    today.

25    THE COURT:  Well, those--that seems like

1  information that's more likely to be in the hands of the

2  defendant than it is in the plaintiff.

3      MR. BOGGS:  Well, Your Honor, I think in a

4  normal case you're probably right.  But where I think that

5  information probably lies is with A B & C, which is the

6  bankrupt entity.  And the trustee, as I understand it, has

7  control over the records.  And to date, I'm not aware that

8  Mr. Hammer or any of the plaintiffs' lawyers have

9  subpoenaed those records and obtained them, which is

10  something you would think they would do before moving for

11  class certification.

12      We don't have access to those records.  Again, we are

13  a company that advised another company that owned numerous

14  companies, Bluesky being one of them.  Bluesky in turn

15  owned numerous companies.  So our client has no access to

16  those records.

17      I agree with you in a normal Warn Act case, or normal

18  FLSA case, the employer would have those records, but

19  we're not the employer.  We are so far removed that we

20  don't have access to that information.  And frankly, Your

21  Honor, we haven't subpoenaed the trustee either.  But

22  again, it is not our burden on these issues.

23      THE COURT:  Well, it certainly is going to

24  be--it may not be your burden, but I would think those

25  would be facts you would want to know.

1          MR. BOGGS:  Well, Your Honor, they may be, but I

2     think we're better off if the plaintiff hasn't proven

3     those facts, because it is the plaintiffs' burden, so I

4     would be interested in those facts if they come out, and

5     we would probably challenge them.  And it is--our

6     principal argument here is that this is very premature

7     without any evidence to support the motion for class

8     certification, other than an eight-paragraph affidavit

9     from one worker who is not even a named rep.  Only one of

10    those paragraphs, paragraph 2, of the affidavit relates to

11    the WARN claim.  And all it says is:  I never received any

12    notice at the Ranson facility.  That's all we have in

13    front of Your Honor.  We don't have any other evidence

14    from which Your Honor can make a determination and analyze

15    the record it has to do in order to make a determination

16    on class certification under Rule 23.  And certainly, no

17    ammunition to then write sort of an order or opinion,

18    which the Court is required to do, analyzing the Rule 23

19    factors.

20         And as you saw from our brief, we identified a couple

21    of Fourth Circuit cases.  That is the burden, whether or

22    not the plaintiffs may be able to do that sometime down

23    the road, I don't know.  They may be able to do it for one

24    facility and not for two others.  But at this point, they

25    haven't done it for any of the facilities.

```
1              THE COURT:  What about typicality?

2              MR. BOGGS:  Even more important, Your Honor.

3     Although there are several named plaintiffs in the case,

4     we understand there's going to be a new plaintiff, poppy

5     Chrisman, who is going to be a sole class rep..  I

6     understand that she worked only at the Ranson facility,

7     did not work at the other two facilities, and from our

8     perspective, each facility requires a different analysis

9     of whether or not the employees that worked there are WARN

10    eligible.  Specifically whether there was 50 full-time

11    employees in the six of the 12 months preceding the time

12    that the WARN notice should have been given.  Ms. Chrisman

13    may be a very fine representative, I don't know yet, for

14    the people at the Ranson facility.  But she has no

15    commonality or interests or typicality with the claims

16    being made by the people in Orange County, Virginia, or at

17    the Berkeley County facility.  In fact, she would have no

18    interest in pursuing those.

19         So, if there's disputes over the facts about the

20    number of employees at those facilities, how many are

21    part-time or full-time, whether they worked 20 hours a

22    week, or more, she is not going to have any interest in

23    any of that.  She is only going to be concerned about what

24    happened at the Ranson facility.  And for that reason,

25    Your Honor, we don't think that her claim is typical.  Her
```

1    claim is going to be focused on Ranson.  It is not going

2    to be focused on the other two facilities.

3        There currently is no named plaintiff or class

4    representative that is representing interests of the

5    people at those other two facilities.  And I think here

6    the typicality requirement and the adequacy of the class

7    rep., not adequacy of counsel, I'm not challenging that,

8    but the adequacy of the class rep., both are not met, Your

9    Honor.  And there's, again, no evidence that they do in

10   fact meet those.  And I don't see how they could, given

11   that the people at those different facilities have

12   different interests, different burden of proofs on whether

13   or not their particular facility is going to be eligible

14   for WARN treatment.

15       And that, frankly, sort of rolls over--that same

16   argument--I don't mean to interrupt, but into whether

17   common issues predominate over specific issues.  And, you

18   know, there is the common issue that's been identified,

19   whether people received notice.  That certainly is a

20   common issue.  But that's pretty easy one.  That's not

21   going to take up a lot of the Court's time.  Or, frankly,

22   a lot of the time of the parties involved.

23       I think the bigger issue is going to be the number of

24   people, and whether or not they are eligible for WARN at a

25   particular facility.  And again, those are very different

 1    issues for people in Ranson, which I understand is a

 2    larger facility.  I'm not saying it meets the WARN

 3    standards, but it is a larger facility than maybe some of

 4    the other facilities.

 5        And those issues at the different locations are going

 6    to predominate over the issue of whether people at any

 7    particular facility received notice.

 8            THE COURT:  All right.  Thank you.  Let me hear

 9    from the plaintiff?

10            MR. BOGGS:  Thank you, Your Honor.

11            MR. GEFFERT:  Your Honor, if I may, let me just

12    address first the--well, the numerosity issue.  We submit

13    there is a parallel state court action currently pending

14    which involves this payment--primarily, payment of the

15    last check people just didn't get when they closed

16    summarily.  That class has been certified because it

17    contains over--the Court has found it contains over 200

18    people.  There are 185 individuals who through counsel

19    have entered an appearance in that action.

20        We also have at a hearing to which Mr. Hare referred a

21    reliance reply brief that took part--took in--placed in

22    the bankruptcy case where Cathy Jo Van Pelt, who is a

23    defendant in this action, testified that A B & C had about

24    500 employees as of March 14th.  Now, even if only 20

25    percent of those are full-time employees, that's 100

1    people, which clearly meets numerosity requirement.   There

2    have been a number of depositions taken.   No parties have

3    ordered transcripts.   And deposition testimony indicates

4    about 75 percent of the employees were full-time

5    employees.   And therefore, covered by the WARN Act.   So we

6    think numerosity is not a problem.

7        With respect to the three facilities, A B & C was one

8    business entity.   The--again, at the hearing--the

9    bank--bankruptcy hearing to which Mr. Hare referred, Ms.

10   Van Pelt testified that the reason that all three

11   facilities were closed on March 14th was because one bank

12   failed to fund a common payroll account.   Sovereign Bank.

13   So they had no money to pay any of the employees.   They

14   are all in operation.   In depositions taken last week,

15   witnesses testified that the call centers shared

16   their--the Orange, Virginia, operation was a call center,

17   as was the Ranson call center.   And most of the product

18   was shipped out of Martinsburg.   Shared the same client

19   database.   They shared the same programs.   They shared the

20   same protocols.   They had staff meetings which

21   interlocked.   They had the same procedures.   They were one

22   organization.

23        In addition to that, the testimony, I think by Mr.

24   Lutz, who is also a defendant here, at the bankruptcy

25   hearing said all the equipment, the computers, the

1    conveyor belts, the programs, all of it, was just one A B

2    & C operation and belonged to A B & C.  And at the

3    bankruptcy meeting said, it is all in those locations.

4         Plaintiffs have attempted and talked to the trustee

5    about getting the records, because we would like to have

6    them.  The problem is that there are no paper copies of

7    those records.  They are all on a proprietary program

8    located on an--on computers.  Because of the way the place

9    was shut down so suddenly, those files may or may not be

10   wholly intact.  And the estimate that we got from a

11   computer specialist to get them was $10,000.  Dave?

12            MR. HAMMER:  About $10,000.

13            MR. GEFFERT:  To try to get the records.  And

14   there's no way to get it, even for just the last 60 days.

15   And that's why we haven't gotten them.

16        What we do have is, other than out of the bankruptcy

17   proceeding and Department of Labor involvement, we have

18   addresses for several hundred of the employees who were

19   due their last checks on the last day, and who would be in

20   the WARN class because they were people who were

21   terminated on March 14th with no notice.  So we think

22   there's no real issue as to commonality.  This is stuff

23   that the defendant knows.

24        Also, nor is there any issue with respect to

25   typicality, numerosity, it is all the same thing.  All

1    plants closed on March 14th with no notice.  At the

2    instruction--Ms. Van Pelt also testified she got a phone

3    call from defendants Coleman and (Pulsalini), I'm sorry,

4    who told her, Close everything down.  We have got no money

5    to pay anybody on March the 14th.  All of them subject to

6    exactly the same action that gives rise to the WARN

7    action.  So we think we have met all of those.

8        Poppy Chrisman is not a new plaintiff.  She is an

9    original named plaintiff.  She has responded to

10   interrogatory answers--interrogatories, produced

11   documents, was present at the mediation session that the

12   parties held in an attempt to resolve this, and has had

13   her deposition taken recently.  She is a person we have

14   identified as a class rep. because she is subject to the

15   same action, closing without warning, which gives rise to

16   everything.  We think she is an adequate representative

17   for all of the entities, the three operations here,

18   because they are one integrated entity.

19          MR. BOGGS:  Your Honor, may I respond to some of

20   those points, if counsel is through?

21          MR. GEFFERT:  Unless the Court has questions?

22          THE COURT:  All right.

23          MR. BOGGS:  Your Honor, first of all, counsel's

24   characterization of evidence that has occurred at

25   depositions is not evidence in and of itself.  And counsel

1    is now trying to support a motion with statements by

2    himself that aren't supported by evidence.  So, I think it

3    sort of goes exactly to my point, that counsel gets up

4    here and feels the need to sort of supplant the single

5    affidavit they have, supported with these things that

6    happened in depositions.  I would say that that is not

7    evidence.

8        The other issue is this fact that there was simply a

9    finding in another case about the number of employees at A

10   B & C says nothing to whether or not the number of

11   employees necessary at each facility has been met for

12   purposes of WARN.  Counsel represented that, well, even if

13   you assume 20 percent.  You can't assume anything.  You

14   have to put in evidence.  And there is no evidence of the

15   number of full-time employees.  It could be one.  I don't

16   think it probably is, but they have an obligation to put

17   that evidence in.  And they haven't done that.

18       The final point, Your Honor, and I'll be brief, is

19   that you don't treat all these employees as a single--as a

20   single event.  You do for determining whether or not the

21   100-person limit for an employer has been met.  I concede

22   that.  But what I don't concede is whether what you look

23   at, the number of employees for whether a particular

24   facility and the employees at that particular facility are

25   WARN eligible.  The WARN Act regulations are very clear,

1    that you look at each facility.  And the standard there is

2    whether 50 full-time employees in fact were there at the

3    time that the notice should have been given.  So you don't

4    group all of them in together for that purpose.

5        And so these statements about the number of employees,

6    that it is 100 or 200 or 300, overall, is meaningless for

7    purposes of certifying a class for WARN under Rule 23.

8        I don't know if you had any questions, Your Honor?

9            THE COURT:  No, not yet.

10           MR. BOGGS:  Okay, thanks.

11           MR. GEFFERT:  Your Honor, if I could make just

12   one point?  Two points.  One is, I disagree with the

13   regulations.  I think that they are clear that they are

14   all together.

15       But the second point is, we did submit evidence upon

16   Ms. Chrisman's interrogatories.  Answers are before the

17   Court.  Another plaintiff, Eric Woomer, W-O-O-M-E-R, are

18   before the Court.  We have submitted the affidavit of Ms.

19   Miller, which they don't contradict.  They just say, well,

20   it is just one affidavit.  But we're not proving our case

21   here.

22       The Fourth Circuit is clear, we don't address the

23   merits here.  We have produced evidence that there are

24   more than 100 people easily who were affected by the

25   closing.  We have produced evidence that we submitted with

1    the brief of each of the factors on the interrogatory

2    answers and the other documents we submitted.

3        And I point out the other stuff--the other factor--the

4    other evidence and testimony that are here today, because

5    it is developing, and it shows that there really isn't a

6    dispute about any of these factors, other than that the

7    defendants say there is.  We have got the evidence.

8    There's additional evidence that is going to be in

9    discovery.

10       And the Court will recall part of the--it was stalled

11   in bankruptcy because of a bankruptcy proceeding for a

12   while, and parties have engaged in some settlement

13   discussions, and also written discovery, before getting to

14   the depositions testimony, I think in an effort to make it

15   as efficient as possible.  There's evidence by our attempt

16   to settle it at mediation.  It didn't work.  But I think

17   the parties have been working to try to keep it there.  I

18   think that regardless of whether the Court considers the

19   additional things, and I brought copies of those, we have

20   met our burden.

21           THE COURT:  Wait a minute.  Did I understand

22   that these depositions were taken, but no transcripts have

23   been ordered?

24           MR. GEFFERT:  That's correct, sir.

25           THE COURT:  Why is that?

1          MR. GEFFERT:  Well, the depositions have been

2     taken--have been taken by the defendants.  And why they

3     didn't order copies, I don't know.  We haven't because

4     they are our clients, and we know what they said.  And we

5     don't feel that we need them at this point.  Usually the

6     party who takes the deposition orders the transcript.

7          THE COURT:  All right.  Do I understand that the

8     Martinsburg facility did not have a call center?

9          MR. GEFFERT:  That's correct, sir.

10          THE COURT:  And I'm jumping ahead here a little

11     bit.  How would the Martinsburg facility be suitable for

12     the FLSA claim?

13          MR. GEFFERT:  Well, we don't think that the

14     individuals there have a claim.  We said so in our reply

15     brief.  What we have--the reason we have proposed to do

16     the notice as we have, was with one notice going out is,

17     in part, to simplify things, and also to keep costs down.

18     I mean, because the FLSA--FLSA is an opt-in class, and

19     because the class notice talks about the overtime and

20     describes what the class is, or at least our proposed

21     notice, we expect we wouldn't get cards back from those

22     people.  And if we do get some cards, opt-in cards back

23     from people who don't have those claims, we haven't

24     pursued weeding them out, and we will, because they don't

25     have any claims.  But that's a simple matter of finding

1    out where they worked.

2            THE COURT:  Okay.  Do--if I grant the motion,

3    what kind of a deadline do we need to get cards in?

4            MR. GEFFERT:  To get them back?

5            THE COURT:  And could you speak into the

6    microphone, sir?

7            MR. GEFFERT:  I just want to make sure I don't

8    misrepresent something with my cocounsel here.  We expect

9    90 days within which to reply.  Ninety days gives time for

10   cards to come back where the addresses that we had,

11   although they were current as of March 14th, 2008, they

12   may have moved on.  Forwarding addresses expired.  We can

13   get them back and try and locate new addresses for them.

14   And gives us adequate time then to send it back out.  My

15   experience has been that 90 days will usually be

16   sufficient for that.

17           THE COURT:  Is that going to threaten the trial

18   date?

19           MR. GEFFERT:  I don't anticipate that it would,

20   Your Honor.

21           THE COURT:  I can't hear you, sir.

22           MR. GEFFERT:  I'm sorry.  I don't think--I don't

23   anticipate that it would threaten a trial date.  Because

24   that only--that will affect who is in the class, has less

25   to do with how the case is resolved than it does with

1    damages.  And I would anticipate that as we get closer to

2    trial, the Court will--might want to look at having a

3    trial on liability.  And after that, figuring out the

4    damages.  That's been a common way of doing it, both in

5    the Warn Act cases, a couple of which we have cited in our

6    reply brief, and it has also been one way of figuring out

7    damages in the FLSA claims.  Just because by the nature of

8    any of these things, there are some individual

9    determinations to be made.  I believe that's the way we

10   did it in a case that--to which we referred, which was

11   tried before--or handled by Judge Broadwater, Kidrick_v._

12   ABC_Rental, where we had both an FLSA opt-in and a state

13   law wage claim.  We resolved the merits of that first, and

14   addressed issues of liability.  And my recollection is

15   once liability was determined, parties were able to work

16   among themselves and resolve issues about damages, because

17   they are largely arithmetical.

18            THE COURT:  Do you wish to present any testimony

19   today?

20            MR. GEFFERT:  No, sir.

21            THE COURT:  Thank you.  Does the defendant wish

22   to present any testimony today?

23            MR. BOGGS:  No testimony, Your Honor.  I don't

24   think we need to.  But I would like to speak, unless Your

25   Honor doesn't--would not like me to, on the FLSA piece of

1    the class certification issue.  On the collective action.

2    Because I think that even more than the WARN action, there

3    are a lot of individualized issues that I would like to

4    explain, Your Honor, as to why liability for any

5    particular individual is going to require individualized

6    analysis.  And if Your Honor would like me to approach, I

7    could explain that?

8              THE COURT:  Go ahead.

9              MR. BOGGS:  Thank you, Your Honor.  Your Honor,

10   first I'd like to say that similar to Rule 23, 216(b) of

11   the FLSA also requires that evidence be produced on the

12   very issues on whether or not the claims are similarly

13   situated.  Again, that evidence has not been presented

14   here.

15        But on the merits, whether or not a particular person

16   is eligible, or whether the company could be liable to

17   them for overtime for time worked off the clock, is going

18   to require a very individualized analysis.  It is not

19   simply damages.  It goes directly to liability.

20        There has been--there has been no evidence about the

21   number of people that worked over 40 hours a week off the

22   clock.  In fact, the testimony that has occurred in the

23   depositions indicate that many of these people only took

24   three to five minutes to log on to the computer.  That the

25   computers were already on, that it was three to five

```
 1    minutes, which is lower, or two to five minutes, which is
 2    less time than the three to seven minutes, depending on
 3    which of the plaintiffs you believe.  They were allowed to
 4    log in before their start time was to start.  So, what you
 5    would have to do to determine whether any particular
 6    person is entitled to overtime is to interview them, ask
 7    them--or depose them:  When did you start to work?  How
 8    long did it take you to turn the computer on?  How long
 9    did it take to you log in to the programs?  Did you log in
10    to the programs before you started work or after you
11    started work?  Did you work 40 hours a week, or were you
12    simply a part-time person?
13        All of these issues would have to be asked, not as
14    regard to damages, Your Honor, but liability.  Because
15    unless all of those are in the affirmative, there can't be
16    liability for those people.
17        So to certify a class that requires an individual
18    analysis of those factors is completely inappropriate
19    under the thin, thin record that's been presented to Your
20    Honor.  You know, frankly, Your Honor, with all due
21    respect, I don't understand that there would be sufficient
22    evidence before you to even write opinions on these two
23    issues.  But on this case in particular, what happens for
24    each individual person and how much time it takes for them
25    to log on to the computer and log on to the program is
```

1    going to go directly to liability.  And so far the

2    evidence that has come out at the deposition, which again

3    is not our burden to present, has suggested there is wide

4    variances on that particular issue.

5        Do you have any questions, Your Honor?

6            THE COURT:  Well, if someone was working less

7    than 40 hours and not being paid for working off the

8    clock, why wouldn't that be compensable under Fair Labor

9    Standards?

10           MR. BOGGS:  Well, it might be, Your Honor.  But

11   I think it is also compensable under the state class

12   action that's already been certified.  This claim, as

13   identified, is limited to the overtime piece.

14           THE COURT:  I thought the state claim was

15   strictly a Wage Payment and Collection Act for the unpaid

16   final check?

17           MR. BOGGS:  I don't think it is that limited to

18   that, Your Honor.  If counsel says it is, then I may be

19   corrected.  But I understood that this case was limited to

20   the overtime that the others asserted for any unpaid

21   wages, and it wasn't limited in any way.  But I may be

22   misreading their complaint.  But on the face of it, it

23   doesn't seem to be so limited.

24       And in the--and the way that this complaint is

25   drafted, which this overtime claim wasn't even a part of

1     their original complaint.  It was tacked on later on.  It

2     was originally just a WARN claim.  This is sort of an

3     afterthought.  And the number of people that are going to

4     be eligible for overtime, excuse me, again it is limited

5     to the call centers which Your Honor already found.  But

6     not only at Martinsburg would be eliminated, but many of

7     the employees at the other facilities would not be part of

8     this class and should not receive a notice unless you are

9     a call member.

10          But in addition to that, we believe it is limited to

11    overtime on the face of the complaint.  And therefore, you

12    would have to look and see whether these people had worked

13    already 40 hours in any particular week, and then whether

14    they had worked beyond 40 hours.  And more than a de

15    minimis amount.  So them working de minimis, which they

16    wouldn't be entitled to the time if it is only a minute a

17    day, something like that.  It has to be something more

18    significant.  There's no way of knowing that, especially

19    given the nature of the allegations and the testimony.

20    Some of these people didn't work any time over their

21    regularly scheduled time because they were able to turn on

22    and log in to the computer in the time period that they

23    were allowed to log in--excuse me, to punch in, before

24    they started work.

25               THE COURT:  Thank you.

1                MR. BOGGS:  Thank you, Your Honor.

2                THE COURT:  Mr. Geffert?

3                MR. GEFFERT:  Yes, sir?

4                THE COURT:  Tell me what the allegations in the

5       state proceedings are.  I understand you have got a Wage

6       Payment and Collection for the final unpaid check.  Is

7       there anything else?

8                MR. GEFFERT:  Yes, sir.  Mr. Boggs actually

9       characterized that correctly.  There are two claims.  One

10      is just for the last check.  And then there is also a

11      claim for straight time wages only.  That is, the--for

12      hours which were worked, but for which they were not paid.

13      But that court case does not seek overtime.

14         In this case we're only looking at--

15                THE COURT:  Why?  Why separate them?

16                MR. GEFFERT:  Because we wanted to keep one case

17      in state court and one in federal court, Your Honor.  We

18      had hoped to get a little quicker result on the wage

19      payment part of it because it is a clearer issue.  And:

20      Did you get the check?  You didn't get the check?  And

21      hopefully get their money quicker.  It didn't work out,

22      but that's--that was our thinking.

23         If I may address, Your Honor, the issue about the

24      FLSA?  This is not--it is an opt-in class, and the cases

25      are clear that we don't have to meet--there is no--that

1     Rule 23 requirements do not apply.  What you do have to

2     show is that there was some common practice or policy that

3     was applied to the potential class members.  And that

4     practice and policy is that individuals, and Ms.

5     Chrisman's affidavit and Ms. Miller's affidavit, as well

6     as interrogatory answers, show they have to log in to--had

7     to get to their shift position 15 to 20 minutes early

8     because it took that long to boot up the computers, so

9     that they could be ready to perform their functions at the

10    beginning of the shift, which they were required to do.

11        Now, Mr. Boggs is correct, there was some testimony at

12    a deposition recently that for a small subgroup of

13    employees, who were new employees and had fewer--had been

14    trained on fewer of the programs or fewer of the

15    customers, that it didn't take that long to log in.  But

16    that's a small subset of the employees.

17        Mr. Boggs is also correct that at some point we'll

18    have to figure out who worked overtime and how much.  But

19    that is a case with every single FLSA opt-in case.  It is

20    always the same.  Under Mr. Boggs' argument, 216(b) would

21    be absolutely meaningless because of the individualized

22    determinations that you have to make at some point for any

23    employee, because they all are.  Mr. Boggs' argument would

24    eliminate a long line of donning and doffing cases that

25    have been developed throughout the years in the federal

1    courts where they have been allowed even this.

2    They--though people arrive at different times there, they

3    have to be determined who dressed quicker than the other

4    person.  What equipment did they have to do?  How long did

5    it take?  That's an FLSA problem.

6        But what the FLSA collective action allows the Court

7    to do is first determine whether there was practice and

8    policy of requiring or suffering or permitting people to

9    come in, do work for which they were not paid, and whether

10   that practice was lawful.  That is the issue which the

11   Court decides under 216(b) case.  And then after that, you

12   move to figure out who gets what.  And the evidence--the

13   two affidavits, the interrogatory we presented--well, Ms.

14   Chrisman's interrogatory answers and Ms. Miller's

15   affidavit say that's the practice and a policy.  And

16   that's sufficient for the showing we have got to make

17   here.

18       Plus in a 216(b) case, the Court--the cases

19   contemplate that the Court makes an initial determination

20   that there is some showing that there is a practice and

21   policy, and in which more than one person may be affected.

22   We send out the notices, and if it turns out Mr. Boggs is

23   correct and there really aren't any class members for

24   that, the Court can then revisit that issue and decertify

25   the FLSA class.  That is the standard means of proceeding

1    in the FLSA class action cases.

2       So we think we have met the 216(b) standard,

3    especially since it is a much lower standard than is

4    required for the Rule 23 cases because of the very nature

5    of FLSA claims of this type.

6       And, the other part of it is, Mr. Boggs says there are

7    some determinations about--making--who did what?  But

8    that's really because of the deficiencies of the

9    defendant.  The law has been clear now for 60 years that

10    employers have a responsibility to keep pay records.  And

11    when they don't, and when they don't keep them in a form

12    that is easily accessible, and the FLSA regulations have

13    required that for 40 years they be kept in a manner so

14    that--this is in part 16(b) of the (29C FCR,) that they

15    are required to keep them in a form so they can be

16    retrieved within 72 hours.  And that's so if the

17    Department of Labor comes knocking, they say we're going

18    to be there, let us look at your pay records.  And that's

19    been the law for 40 years.  And if they don't have them,

20    the law says that's their problem.  And the Supreme Court

21    announced that position in the Clemmons case 60 years ago.

22       And the definition of who is an employer for the FLSA

23    purposes have to do with operational control, and which

24    can extend farther up the ladder than other statutes.

25       So, we think that that--for FLSA purposes, for 216(b)

1    purposes, we think we have shown there is a common

2    practice.  We have shown that there are more than one

3    person affected by it.  The deposition testimony when we

4    get the transcripts will support that.  But we have

5    enough.

6        The Court can certify that class.  We send out the

7    notices.  And if it turns out that that doesn't apply,

8    defendants have the option of moving to decertify the

9    class, and the Court can revisit it.  That's standard FLSA

10    collection practice.

11            THE COURT:  Thank you.

12            MR. BOGGS:  Your Honor, may I speak real briefly

13    to a couple points?

14            THE COURT:  Sure.

15            MR. BOGGS:  Your Honor, there's no evidence at

16    all of not keeping and maintaining records at all.  So the

17    reference to that should be ignored.

18        The other thing that I had forgotten to say earlier is

19    that you may remember, Your Honor, that the Department of

20    Labor is in the process of getting many of these

21    individuals paid their back wages.  And as part of that,

22    evidence has come out that these people are being required

23    to sign a waiver of any claims that they have for unpaid

24    wages.

25        My understanding from the testimony is that some

1    people have conceded that they have signed those, which

2    again will require an individual analysis on whether or

3    not somebody has signed a waiver of these kind of claims

4    or not.

5        I think the most important concession that we just

6    heard is that this is limited to overtime.  And although

7    the donning and doffing cases that counsel identified,

8    he's correct, that involves not being paid for the time.

9    This case only involves overtime.  And because of that

10   limited component, this is certainly going to require an

11   individual analysis as to liability, not simply damages.

12   Thank you.

13          THE COURT:  Excuse me, who is making them sign

14   these waivers?

15          MR. BOGGS:  The Department of Labor.  There has

16   been money funded to the Department of Labor that they are

17   going to be recovering, my understanding is, near or full

18   amounts that these folks are entitled to.  In exchange for

19   that, the Department of Labor is requiring them to sign

20   waivers of any claims that they may have for those

21   amounts.  And it is our position that those claims would

22   limit their ability to recover any claims here, or in the

23   other cases.  And it would require us to decide, well, who

24   has signed those waiver and who hasn't.  And again, that's

25   why it is going to require some individual analysis.

1           THE COURT:  All right.

2           MR. BOGGS:  Thanks, Your Honor.

3           MR. GEFFERT:  If I may, Your Honor, speak to the

4    issue of the waiver?  The Department of Labor is

5    recovering only minimum wage.  That's it.  That's the

6    focus, because that's what they do.

7           THE COURT:  Into the microphone.  I can't hear

8    you.

9           MR. GEFFERT:  FLSA, their focus is recovering

10   the minimum wage, because they have no enforcement

11   authority beyond minimum wage.  Or if they should find

12   overtime, but they are not investigating overtime.

13      Secondly is the Department of Labor does not require

14   people to sign waivers.  They have a form that accompanies

15   a check that says, I got the money.  It is a receipt.  It

16   is not a waiver of any other claims, because the

17   Department of Labor, as matter of policy, does not do that

18   and has not done that.

19      I have never--been doing these cases for 30 years,

20   Your Honor, some with the Department of Labor, and I have

21   never seen a waiver.  And in fact, their standard form is

22   just that.  It is a receipt.

23           MR. BOGGS:  Your Honor, I apologize if I

24   misspoke, but that was my understanding of the testimony

25   that came out at the depositions.  That it was going to be

1    a release of any future claims.  In any event, it is not a

2    minor point, but it is a point.

3            MR. GEFFERT:  I would point out that that same

4    issue is one of the Warn Act cases we cited in our reply

5    brief.  One of the defenses raised by the employer in that

6    case was an allegation that certain class members had

7    signed waivers or arbitration agreements.  And in the Rule

8    23 context, the Court in that case said, well, maybe, but

9    what predominates is the policy and the practice.  And

10   those other issues are subservient to it and could be

11   addressed at a later time.  We have got the same situation

12   here in the 216(b) case.  And, again, if there are waivers

13   that are signed, I mean, they are easily obtained.  We can

14   get them from the FOIA request.  They can be produced, and

15   the Court can then make a subsequent follow-up decision on

16   whether or not the 216(b) case should be decertified,

17   which is common FLSA procedure.

18            THE COURT:  Thank you.  Anything else?

19            MR. GEFFERT:  Not for the plaintiffs, Your

20   Honor.

21            MR. BOGGS:  None for the defendants, Your Honor.

22            THE COURT:  All right, thank you.

23            ( Proceedings were adjourned.  )

24

25

1

2    I hereby certify that the foregoing is a correct

3    transcript from the record of proceedings stenographically

4    reported and transcribed in the above-entitled matter.

5

6                              /s/ *Terry C. Hamrick*

7                              Terry C. Hamrick, RMR, CRR

8                              Official Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25