## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF WEST VIRGINIA
## MARTINSBURG DIVISION

JOSEPH NOLAN, ERIC WOOMER,     )
CARLA COBLE, STEPHANIE LAING,     )     Honorable John Preston Bailey
POPPY CHRISMAN,     )     (Magistrate David J. Joel)
    )
      Individually and as Class     )
      Representatives, Plaintiffs,     )
    )
v.     )     Civil Action No. 3:08-CV-62
    )
RELIANT EQUITY INVESTORS, LLC, a     )
foreign limited liability company, et al.,     )
    )
      Defendants.     )

### SETTLEMENT STIPULATION

This Settlement Stipulation (the "**Settlement Agreement**") is entered into on this 17th day of December, 2010 (the "**Effective Date**"), by and between: (1) Joseph Nolan, Eric Woomer, Carla Coble, Stephanie Laing and Poppy Chrisman (the "**Representative Plaintiffs**"); (2) all members of the Rule 23(b)(3) WARN Act class (the "**WARN Act Class**") certified in the lawsuit styled *Nolan, et al. v. Reliant Equity Investors, LLC, et al.*, pending before the United States District Court for the Northern District of West Virginia, Case No. 08-CV-62 (the "**Nolan Lawsuit**"); (3) all members of the Section 216(b) FLSA collective action (the "**FLSA Class**") conditionally certified in the Nolan Lawsuit; (4) all members of the Rule 23(b)(3) WPCA class (the "**WPCA Class**" and together with the WARN Act Class and the FLSA Class, the "**Class Members**") certified in the lawsuit styled *Coble, et al. v. Reliant Equity Investors, LLC, et al.*, pending before the Circuit Court of Jefferson County, West Virginia, Case No. 08-C-476 (the "**Coble Lawsuit**"); (5) Josetta Gladney, Cheryl Wilfong, Ruth Johnson, Amy Cawthorn and David McCauley (the "**Gladney Plaintiffs**" and together with the Representative Plaintiffs and



EXHIBIT
1

the Class Members, the "**Plaintiffs**"); (6) Reliant Equity Investors, LLC ("**REI**"); (7) BlueSky

Brands, Inc. ("**BlueSky**"); (8) Thomas Darden, Jr. ("**Darden**"); (9) Qian Elmore ("**Elmore**");

(10) Carr Preston ("**Preston**"); (11) Tatum, LLC ("**Tatum**"); and (12) Robert Pulciani, Philip

Wax, Christopher Stevens, Larry Morgan, Cathy Jo Van Pelt, Kimberly Myers, Ed Coleman,

Michael Lutz, Richard Hebert and Larry Muzzy (collectively, the "**Individual Defendants**" and

together with REI, BlueSky, Darden, Elmore, Preston and Tatum, the "**Defendants**" and together

with the Plaintiffs, the "**Parties**"), for the purpose of fully, finally and forever resolving,

discharging and settling any and all claims asserted in, or related in any way to: (a) the Nolan

Lawsuit; (b) the Coble Lawsuit; and (c) the lawsuit styled *Gladney, et al. v. Reliant Equity*

*Investors, LLC, et al.*, pending before the Circuit Court of Jefferson County, West Virginia, Case

No. 08-C-116 (the "**Gladney Lawsuit**" and together with the Nolan Lawsuit and the Coble

Lawsuit, the "**Lawsuits**") upon and subject to the terms and conditions of the Settlement

Agreement as set forth in detail herein.

## ARTICLE 1
## Background

### A.    The Nolan Lawsuit

**1.1**     On March 20, 2008, Joseph Nolan, Eric Woomer, Carla Coble and Stephanie

Laing, individually and as class representatives, filed a complaint in the United States District

Court for the Northern District of West Virginia (the "**District Court**") against REI, AB&C

Group, Inc. ("**AB&C**") and BlueSky asserting a cause of action under the Worker Adjustment

and Retraining Notification Act, 29 U.S.C. §§ 2101, et seq. (the "**WARN Act**") related to the

shutdown of AB&C on or about March 14, 2008, thereby initiating the Nolan Lawsuit.

**1.2**     On March 28, 2008, the Representative Plaintiffs filed an amended complaint in

the Nolan Lawsuit, adding (1) a representative plaintiff, Poppy Chrisman, (2) defendants Tatum,

Richard Hebert, Cathy Jo Van Pelt, Kimberly Myers, Michael Lutz and Larry Muzzy, and (3) an additional cause of action under the Fair Labor and Standards Act, 29 U.S.C. §§ 201, et seq. (the "**FLSA**") related to overtime work allegedly performed by certain AB&C employees off the clock for which they were not paid (together with the WARN Act claim, the "**Nolan Claims**").

**1.3**     On June 15, 2009, Representative Plaintiffs moved to certify a Rule 23(b)(3) class with respect to the WARN Act claims and a conditional Section 216(b) collective action with respect to the FLSA claims asserted in the Nolan Lawsuit, which the District Court granted on August 10, 2009.

**1.4**     On December 4, 2009, REI filed a motion to decertify the FLSA Class, which motion is pending in the Nolan Lawsuit.

**B.     The Coble Lawsuit**

**1.5**     On March 19, 2008, Carla Coble and Stephanie Laing, individually and as class representatives, filed a complaint in the Circuit Court of Berkley County, West Virginia (the "**Berkley County Court**") against REI, Darden, Elmore, Preston, Robert Pulciani, Philip Wax, Christopher Stevens, Larry Morgan, Cathy Jo Van Pelt and Kimberly Myers asserting a cause of action under the West Virginia Wage Payment and Collection Act, W. Va. Code §§ 21-5-1, et seq. (the "**WPCA**") for unpaid wages and liquidated damages relating to the shut down of AB&C, thereby initiating the Coble Lawsuit.

**1.6**     Representative Plaintiffs subsequently amended the initial complaint to add (1) representative plaintiffs Joseph Nolan, Eric Woomer and Poppy Chrisman, (2) defendants Tatum, Ed Coleman, Richard Hebert and Larry Muzzy, and (3) an additional cause of action under the WPCA for work allegedly performed by AB&C employees off the clock for which they were not paid (together with the initial WPCA claim, the "**Coble Claims**").

**1.7**     On July 28, 2008, Representative Plaintiffs moved the Berkley County Court to certify a Rule 23(b)(3) class with respect to the WPCA class, which the Berkley County Court granted on October 1, 2008.

**1.8**     On November 17, 2008, the Berkley County Court transferred the Coble Lawsuit to the Circuit Court of Jefferson County, West Virginia (the "**Jefferson County Court**").

**C.      The Gladney Lawsuit**

**1.9**     On March 25, 2008, the Gladney Plaintiffs filed a complaint in the Jefferson County Court against AB&C, REI, BlueSky, Darden, Elmore, Preston, Robert Pulciani, Philip Wax, Christopher Stevens, Larry Morgan, Cathy Jo Van Pelt and Kimberly Myers asserting causes of action for (1) unpaid wages and benefits under the WPCA, (2) common law fraud and (3) emotional distress (collectively, the "**Gladney Claims**" and together with the Nolan Claims and the Coble Claims, the "**Claims**").

**D.      Status of the Lawsuits**

**1.10**    The Lawsuits have been vigorously prosecuted by the Plaintiffs and vigorously defended by the Defendants.  The Parties have conducted significant investigations into the facts giving rise to the Claims and have engaged in substantial discovery over the past 24 months. The Parties anticipate that if the Claims are not settled, the continued prosecution and defense of the Lawsuits would require thousands of hours of additional legal work to complete discovery, prepare for and conduct three separate trials and pursue numerous appeals.

**1.11**    On December 8, 2009, the Parties submitted to their second full day of mediation in a good faith attempt to settle the Claims.  The result of the mediation was a tentative agreement between and among the Parties to settle all of the Claims pursuant to the terms and conditions memorialized in the Settlement Agreement.

## ARTICLE 2
### Benefits of the Settlement

2.1     Plaintiffs' counsel have concluded, after substantial investigation and discovery of the facts surrounding the Lawsuits, after carefully considering the merits of the Claims and defenses asserted in the Lawsuits, the availability (or lack thereof) of insurance proceeds, various insurance coverage issues, the substantial burdens associated with proceeding with the Lawsuits, issues regarding the collectability of any potential judgment for the Plaintiffs, and after two extensive mediation conferences, that it is in the best interests of the Plaintiffs, including the Class Members, to enter into the Settlement Agreement in order to avoid the uncertainties of complex litigation, to assure a benefit to the Plaintiffs and to minimize the hardships and inconvenience associated with continued litigation.  Plaintiffs' counsel each believe that, in consideration of the circumstances and after considerable arm's-length negotiations, the proposed settlement embodied in the Settlement Agreement is fair, reasonable and adequate and confers substantial benefits on, and is in the best interests of, the Plaintiffs, including each Class Member.

2.2     The Defendants have vigorously denied and continue to deny any liability with respect to any of the facts or Claims asserted against them in the Lawsuits and have interposed numerous affirmative defenses to the Claims, all of which Defendants contend have legal merit. Nonetheless, after substantial investigation into the circumstances surrounding the Lawsuits, including the Claims and defenses asserted therein, as well as the availability (or lack thereof) of insurance proceeds, various insurance coverage issues, the substantial costs associated with continuing to defend the Claims, and after two extensive mediation conferences, the Defendants believe it is in their best interests to enter into the Settlement Agreement in order to avoid the further expense, inconvenience, distraction and hazards of protracted litigation, to avoid the risks

inherent in uncertain complex litigation and to avoid the expense and risks associated with possible future litigation of similar or related claims amongst the Parties.

## ARTICLE 3
### Agreement of Settlement

**3.1**   **NOW, THEREFORE, IT IS AGREED** by and between the Parties, through their respective counsel, that, subject to the approval of the District Court, the Claims and any and all similar or related claims shall be finally and fully resolved and shall be dismissed with prejudice, and without costs, expenses, or an award of attorneys' fees, upon and subject to the terms and conditions set forth in the Settlement Agreement.

**3.2**   All of the foregoing recitals in the Settlement Agreement are hereby repeated and incorporated as part of the terms of the Settlement Agreement as if fully set forth in this paragraph.

## ARTICLE 4
### Merger of Claims

**4.1**   Each and every Claim, and any and all claims that could have been asserted by any Plaintiff against any Defendant based on or arising from any of the facts and circumstances surrounding the Lawsuits, shall be merged into the Final Judgment contemplated by the Settlement Agreement.  The doctrine of *res judicata* shall apply to each and every Plaintiff, including each and every Class Member, with respect to such Claims and causes of action, which shall not hereafter be asserted against any Defendant in connection with any legal theory. Furthermore, except as specifically provided for in the Settlement Agreement and the Final Judgment, no Defendant shall be deemed responsible for any remedy or relief arising out of such Claims or causes of action.

## ARTICLE 5
## Preliminary Approval of Settlement Agreement

**5.1**     As soon as possible and no later than ten (10) days after the Effective Date, the

Parties shall submit the Settlement Agreement, together with its Exhibits, to the District Court

and jointly move the District Court to enter an order, substantially in the form and content of

Exhibit A attached hereto, preliminarily approving the Settlement Agreement (the "**Preliminary**

**Approval Order**") that will provide for as follows:

**5.1.1**   Preliminarily approve the Settlement Agreement as fair, reasonable and adequate to the Plaintiffs, including the WARN Act Class, the FLSA Class and the WPCA class.

**5.1.2**   Approve the total amount of the Settlement Fund as a fair, reasonable and adequate resolution of all of the Claims asserted in the Lawsuits.

**5.1.3**   Schedule a hearing (the "**Allocation Hearing**") to be held by the District Court no later than thirty (30) days after the entry of the Preliminary Approval Order to consider and determine the allocation of the Settlement Fund among (a) the Plaintiffs, including the WARN Act Class, the FLSA Class, the WPCA Class and the Gladney Plaintiffs, (b) Plaintiffs' counsel for attorneys fees and costs incurred in prosecuting the Lawsuits, including the administrative costs associated with this Settlement Agreement, and (c) and other person or entity as the District Court may order.

**5.1.4**   A briefing schedule for the Allocation Hearing, with opening briefs (if any) due 21 days before the Allocation Hearing and responsive briefs (if any) due 10 days before the Allocation Hearing.

**5.2**     At the conclusion of the Allocation Hearing, the Parties shall jointly request that

the District Court enter an order (the "**Allocation Order**") determining the allocation of the

Settlement Fund.  The Parties expressly consent to and agree that the allocation determined by

the District Court in the Allocation Order is a fair, reasonable and adequate allocation of the

Settlement Fund.  Once entered by the District Court, the Allocation Order shall become an

exhibit to this Settlement Agreement and its terms shall be incorporated herein without any

further ratification or any other action by any of the Parties.

5.3     Within thirty (30) days after the entry of Allocation Order, Plaintiffs shall file a

motion seeking the entry of a final approval order, substantially in the form and content of

Exhibit B attached hereto, (the **"Final Approval Order"**) that will provide for the following:

     5.3.1   Schedule a fairness hearing (the **"Fairness Hearing"**) to be held by the District Court to consider and determine whether the proposed settlement between and among the Parties, as set forth in the Settlement Agreement, should be approved as fair, reasonable and adequate to the WARN Act Class, the FLSA Class, the WPCA Class and the Gladney Plaintiffs and whether the Final Judgment should be entered.

     5.3.2   The form and means of notice(s) of class settlement (collectively, the **"Class Notice"**) in a manner that fully satisfies the requirements of Rule 23(e) of the Federal Rules of Civil Procedure, Section 216(b) of the FLSA and Rule 23(e) of the West Virginia Rules of Civil Procedure.

     5.3.3   A deadline for any pleadings in support of or in opposition to the Settlement Agreement no later than thirty (30) days prior to the Fairness Hearing.

     5.3.4   Provide that the Fairness Hearing may, from time to time and without further notice to the Class Members, be continued or adjourned by order of the District Court.

     5.3.5   Provide that pending any final determination of whether the Settlement Agreement should be approved, the Plaintiffs, including each Class Member, either directly, representatively or in any other capacity, shall not commence or prosecute any claim in any court or tribunal asserting any of the Released Claims against any of the Released Parties.

### ARTICLE 6
### Settlement Administrator

6.1     Upon entry of the Final Approval Order, Class counsel shall retain HBS Class

Action Administration (the **"Administrator"**) for the purpose of performing all acts required

herein of the Administrator.

6.2     The Administrator shall agree in writing to perform all actions required of the

Administrator as ordered by the District Court and set forth in the Settlement Agreement, and to

subject itself to the jurisdiction of the District Court for purposes of enforcement of the Settlement Agreement and distribution of the Settlement Fund.

6.3     The Administrator shall be responsible for calculating and paying from the Settlement Fund all appropriate and applicable taxes, interests, fees and penalties of any nature whatsoever related to any and all distributions made pursuant to the Settlement Agreement, including but not limited to any and all unpaid employment, payroll and/or trust fund taxes due and owing to the Internal Revenue Service or any other State or Commonwealth and any amount identified as a tax liability of AB&C in Schedule A to the March 27, 2008 Letter Agreement between Sovereign Bank and BlueSky, AB&C, Bits and Pieces, Inc., the Paragon Gifts, Inc., the Paragon Gifts Holding, Inc., National Wildlife Direct, Inc. and Winterthur Direct, Inc.  The Administrator shall also be responsible for completing and filing all necessary tax forms related to the administration of the Settlement Agreement.

6.4     The Administrator shall be entitled to a fee equal to forty thousand dollars ($40,000.00) (the "**Administration Fee**"), which Administration Fee shall be paid out of the Settlement Fund as set forth in Article 10.4 of the Settlement Agreement.  The Administration Fee is all-inclusive and includes without limitation all out-of-pocket expenses to be incurred by the Administrator, including but not limited to postage, publication costs, skip tracing costs, court filing fees, tax filing fees, service costs, banking fees, check stock and any other costs the Administrator reasonably incurs in discharging its obligations under the Settlement Agreement. The Administrator will not be entitled to any amounts in excess of the Administration Fee.

6.5     If the Settlement Agreement fails for any reason, including but not limited to cancellation or termination set forth in Article 15 of the Settlement Agreement, the Administrator shall not be entitled to the Administration Fee, but instead shall be entitled only to any out-of-

pocket expenses incurred and paid in discharging its duties under the Settlement Agreement (the "**Termination Reimbursement**"). The Plaintiffs and Defendants shall be equally responsible for funding the Termination Reimbursement. In full satisfaction of the Defendants' obligation to pay for half of the Termination Reimbursement, fifty percent (50%) of the total Termination Reimbursement shall be deducted from the Settlement Fund prior to the return of the balance of the Settlement Fund to the Defendants as set forth in Article 9.9 of the Settlement Agreement.

### ARTICLE 7
### Class Notice

7.1    Within fifteen (15) days after the entry of the Final Approval Order, the Administrator shall cause the court-approved Class Notice to be mailed to each person who is a Class Member at their address listed on the Class List, attached hereto as Exhibit C, by First Class Mail with proper postage prepaid. The return address for the Class Settlement Notice shall be HBS Class Action Administration, PO Box 130, Falling Waters, West Virginia 25419. The Administrator shall promptly conduct a skip trace of the last known address to locate any and all persons whose notice was returned as undeliverable, and, upon finding a new address of such person, update the Class List and promptly mail a new Class Notice to the Class Member at the new address.

7.2    Within thirty (30) after the entry of the Final Approval Order, the Administrator shall arrange for the publication of the Class Notice in one paper of general circulation in West Virginia and one paper of general circulation in Virginia for a period of one week.

7.3    Within forty-five (45) days after the completion of the Class Notice, as set forth in Articles 7.1 and 7.2 of the Settlement Agreement, the Administrator shall serve on all counsel to the Parties a certificate that the Class Notice were given in accordance with the requirements of the Settlement Agreement.

**7.4**   No less than ten (10) days before the Fairness Hearing, the Administrator shall file with the District Court a certificate listing (a) all Class Notices that were returned as undeliverable, (b) all new addresses found for the Class Members and (c) all additional Class Notices mailed to the new addresses.

## ARTICLE 8
### Final Judgment and Orders of Dismissal

**8.1**   At the Fairness Hearing, the Parties shall jointly request that the District Court enter a final judgment and order of dismissal, substantially in the form and content of Exhibit D attached hereto (the "**Final Judgment**"), that will provide for the following:

**8.1.1**   Final approval of the Settlement Agreement.

**8.1.2**   Approval of the Class Member distributions as fair, reasonable and adequate under the circumstances.

**8.1.3**   Determination that proper notice of the Settlement Agreement and all related documents and pleadings has been duly provided to the Plaintiffs, including the WARN Act Class, the FLSA Class, the WPCA Class and the Gladney Plaintiffs, which notice constitutes the best notice practicable and fully complies with Rule 23 of the Federal Rules of Civil Procedure, Section 216(b) of the FLSA, Rule 23 of the West Virginia Rules of Civil Procedure and the United States Constitution.

**8.1.4**   Determination that proper notice of the Settlement Agreement and all related documents and pleadings has been duly provided to the Internal Revenue Service and all other relevant taxing authorities.

**8.1.5**   Determination that all distributions to the WARN Act Class pursuant to the Settlement Agreement constitute damages and not wages and thus are not subject to payroll tax withholding or employer tax liability.

**8.1.6**   Determination that exactly 50% of all distributions to the FLSA Class pursuant to the Settlement Agreement constitute wages and the other 50% constitute liquidated damages.

**8.1.7**   Determination that exactly 25% of all distributions to the WPCA Class pursuant to the Settlement Agreement constitute wages and the other 75% constitute liquidated damages.

**8.1.8**   Determination that the Settlement Agreement constitutes an enforceable consent judgment under the FLSA.

**8.1.9** Dismissal of the Nolan Lawsuit and the Nolan Claims with prejudice, without costs, attorneys' fees and expenses, except as provided for in the Settlement Agreement.

**8.1.10** The release of all Released Claims set forth in Article 11 of the Settlement Agreement.

**8.1.11** A permanent injunction forever barring and enjoining the Parties from asserting, commencing, prosecuting or continuing any Released Claims against as set forth in Article 11 of the Settlement Agreement.

**8.2**     As soon as possible, but no later than seven (7) days after the District Court's entry of the Final Judgment, Plaintiffs' counsel of record shall move the Jefferson County Court to enter an order voluntarily dismissing the Coble Lawsuit and the Coble Claims with prejudice, without costs, attorneys' fees and expenses (the **"Coble Dismissal Order"**).

**8.3**     As soon as possible, but no later than seven (7) days after the District Court's entry of the Final Judgment, Plaintiffs' counsel of record shall move the Jefferson County Court to enter an order voluntarily dismissing the Gladney Lawsuit and the Gladney Claims with prejudice, without costs, attorneys' fees and expenses (the **"Gladney Dismissal Order"** and together with the Coble Dismissal Order, the **"Dismissal Orders"**).

### ARTICLE 9
### Settlement Fund

**9.1**     The total amount available to accomplish the Settlement Agreement is one million, one hundred and seventy-one thousand, thirty-one dollars and sixty cents ($1,171,031.60) (together with all interest and earnings thereon from the date of the payments made by Defendants outlined below, the **"Settlement Fund"**).

**9.2**     Neither the Defendants nor any of their insurers, guarantors or indemnitors shall have any further obligation to make any additional withholdings, transfers or payments of any nature whatsoever, including without limitation for any administrative costs or taxes (including

but not limited to any payroll, income, employer, FICA or any other tax), except as set forth in Article 9.3 of the Settlement Agreement.

9.3     The Settlement Fund shall be funded as follows:

9.3.1     REI shall pay a total of nine hundred forty-six thousand, thirty-one dollars and sixty cents ($946,031.60) into the Settlement Fund, which amount includes eight hundred forty-nine thousand, nine hundred fifty-eight dollars and thirty-six cents ($849,958.36) that has been funded from the proceeds of the Settlement Agreement approved by the United States Bankruptcy Court for the Northern District of West Virginia in the AB&C bankruptcy case, Case No. 08-BK-00482, on February 22, 2010.

9.3.2     Individual Defendants, through their insurer, Travelers, shall combined pay a total of ninety thousand dollars ($90,000.00) into the Settlement Fund.

9.3.3     BlueSky, Darden, Elmore and Preston, through their insurer, Travelers, shall pay a combined total of eighty-five thousand dollars ($85,000.00) into the Settlement Fund.

9.3.4     Tatum shall pay a total of fifty thousand dollars ($50,000.00) into the Settlement Fund.

9.4     The Defendants shall make their respective payments into the Settlement Fund no later than ten (10) business days after the District Court enters the Final Approval Order.

9.5     The Administrator shall establish a Qualified Settlement Fund ("QSF") pursuant to section 468B of the Internal Revenue Code, as amended, and obtain an Employer Identification Number through which the Settlement Fund shall be distributed pursuant to the terms of the Settlement Agreement.  The District Court shall retain jurisdiction over the QSF until it is dissolved by the Administrator as set forth in Article 10.20 of the Settlement Agreement.

9.6     The payments set forth in Article 9.3 of the Settlement Agreement shall be made to the Administrator, as Escrowee, pursuant to an Escrow Agreement, substantially in the form and content of Exhibit E attached hereto.  The Administrator shall deposit the Settlement Fund in

an interest-bearing, demand-deposit account with a federally insured commercial bank in West Virginia (the "**Escrow Account**").

**9.7**     The Settlement Fund shall be held in the Escrow Account until distributed in accordance with the Settlement Agreement.

**9.8**     The Parties agree that the Settlement Fund and the other terms of the Settlement Agreement constitute a fair, adequate and reasonable resolution of the Lawsuits and are specifically intended to include and fairly reflect the potential liabilities for all of the Claims asserted by the Plaintiffs under the WARN Act, the FLSA and West Virginia law.

**9.9**     If the Settlement Agreement fails for any reason, including without limitation cancellation or termination as set forth in Article 15 of the Settlement Agreement, the Settlement Fund (including any interest or earnings thereon), less Defendants' share of the Termination Reimbursement as set forth in Article 6.5, shall be immediately distributed by the Administrator back to the Defendants in proportion to their respective contributions thereto.

### ARTICLE 10
### Settlement Administration and Disbursement Procedures

**10.1**     The Distribution Date of the Settlement Agreement shall be the first date on which all of the following events or conditions have occurred:

> **10.1.1** Execution of the Settlement Agreement by all of the signatories hereto;
>
> **10.1.2** The District Court enters the Final Approval Order;
>
> **10.1.3** The District Court enters the Final Judgment and all applicable time periods to object, appeal or otherwise challenge the Final Judgment have expired; and
>
> **10.1.4** The Jefferson County Court has entered the Dismissal Orders and all applicable time periods to object, appeal or otherwise challenge the Dismissal Orders have expired.

**10.2**    Class counsel shall be responsible for determining the Distribution Date and providing the Administrator and all counsel of record for the Parties with prompt and timely notice of the Distribution Date.

**10.3**    As soon as possible after the Distribution Date, the Administrator shall begin making the settlement distributions in accordance with the Allocation Order.

**10.4**    Unless otherwise ordered by the District Court, the Administrator shall be entitled to withdraw its Administration Fee as set forth in Article 6.4 of the Settlement Agreement from the Escrow Account no sooner than thirty (30) days and no later than sixty (60) days after the Distribution Date.

**10.5**    Any and all appropriate and applicable taxes, interest, fees and penalties of any nature whatsoever shall be paid from the Settlement Fund and allocated to any and all unpaid employment, payroll, and trust fund taxes due and owing to the Internal Revenue Service or any other State or Commonwealth, including, but not limited to, any amount identified as AB&C's tax liabilities in Schedule A to the March 27, 2008 Letter Agreement between Sovereign Bank and BlueSky, AB&C, Bits and Pieces, Inc., the Paragon Gifts, Inc., the Paragon Gifts Holding, Inc., National Wildlife Direct, Inc., and Winterthur Direct, Inc.

**10.6**    Within five (5) days after the completion of the mailing of the Class Member distributions set forth in the Allocation Order, the Administrator shall prepare an affidavit setting out the total number of distribution checks mailed, the individual sums paid and the total distributions made to all Class Members and serve such affidavit on counsel for the Parties.

**10.7**    The return address on the envelopes used by the Administrator to mail the distribution checks as set forth in this Article 10 shall be HBS Class Action Administration, P.O. Box 130, Falling Waters West Virginia 25419.  Upon the return of a distribution check as

undeliverable, the Administrator shall promptly conduct a skip trace of the last known address to locate that Class Member, and, upon finding a new address(es) for such person, issue a letter to each new address requesting confirmation of the Class Member's new address.  Upon receipt of confirmation of such Class Member's new address, the Administrator shall update the Class List, promptly void the returned distribution check and issue a replacement check in the same amount and using the same date as the original distribution check to the Class Member at the confirmed new address.  Not less than once every thirty (30) days, the Administrator shall provide counsel for the Parties with a list of Class Members whose distribution checks were returned as undeliverable and the revised Class List detailing both the original address and any new addresses the Administrator discovers for each Class Member.

   **10.8**    Upon receipt of a written statement, sworn under oath, from any Class Member of a lost, misplaced or stolen distribution check, or upon obtaining a new address for a Class Member, Administrator shall, up to the one year anniversary of the Distribution Date, promptly issue a replacement check provided that the Administrator confirms that the previously issued check has not been cashed and immediately places a stop payment order on the previously issued check.  If the lost or stolen distribution check has already been cashed, then the Administrator shall make a copy of the front and back of such distribution check and refer the Class Member to the proper authorities.

   **10.9**    Upon presentation of letters of administration with respect to an estate of a deceased, disabled or incompetent Class Member, or other sufficient evidence of personal representation, the Administrator shall promptly provide such representative with the distribution check (or replacement check as the circumstances may require) for that Class Member without charge and shall provide counsel for the Parties with the name, address and telephone number of

the personal representative and the name of the corresponding Class Member for whom the letter of administration or other evidence of personal representation has been presented.

10.10   All distribution checks shall bear a prominent legend that the check must be cashed within six (6) months after the date of issuance.

10.11   If a distribution check is not cashed within six (6) months after the Distribution Date (the "**Termination Date**"), the Class Member's right to payment under the Settlement Agreement shall be terminated.  Within thirty (30) days after the Termination Date, the Administrator shall provide counsel for the Parties a list of all Class Members whose distribution checks have not been cashed or presented for payment along with the amount of each uncashed check.

10.12   If, by the Termination Date, any Class Member has not cashed his or her distribution check, then, with respect to each such Class Member, the Administrator shall deposit the amount of such uncashed distribution check as unclaimed property with the appropriate authority for the state of that Class Member's last known address listed on the Class List for the benefit of that Class Member.  Upon the deposit of uncashed distribution funds as unclaimed property, such Class Member shall have no right or claim against the Settlement Fund, any Party or the Administrator for any such money so deposited.

10.13   Any interest or other earnings remaining in the Escrow Account after the Termination Date and after the Administrator has transferred all unclaimed distributions set forth in Article 10.12 (the "**Reserved Funds**") shall be retained in the Escrow Account by the Administrator for six (6) months after the Termination Date to fund any claims asserted by Class Members who counsel for the Parties can verify were incorrectly excluded from the Class List and/or any additional tax liabilities related to the Settlement Agreement.

**10.14**   After six (6) months after the Termination Date (the "**Reserved Funds End Date**"), the Administrator shall donate any Reserved Funds (including all interest and earnings thereon) remaining in the Escrow Account in equal halves to CASA and the United Way of the Eastern Panhandle, West Virginia non-profit organizations (the "**Charity Donation**").

**10.15**   As soon as possible after the Termination Date, the Administrator shall issue all necessary federal, state and local tax forms to each Class Member who receives a share of the Settlement Fund and shall file all necessary tax reports with the appropriate taxing authorities.

**10.16**   Within sixty (60) days after the Termination Date, the Administrator shall compile a report (the "**Final Distribution Report**") providing a detailed reconciliation of all distributions from the Settlement Fund, including but not limited to:

> **10.16.1**   For each Class Member: (a) the amount of the distribution check(s), including the tax distribution check(s); (b) the address(es) to which the distribution check(s) was sent; (c) the date(s) the distribution check(s) was issued; (d) the date(s) the distribution check(s) was cashed; and (e) the date the unclaimed distributions were transferred to the appropriate state agency for unclaimed property.

> **10.16.2**   The date and amount of distributions for incentive award(s), if any, provided for in the Allocation Order.

> **10.16.3**   The date and amount of distributions for any attorney fee award(s) provided for in the Allocation Order.

> **10.16.4**   The date and amount of distributions for any taxes required to be paid from the Settlement Fund and the nature of such tax distributions.

> **10.16.5**   The amount of Remaining Funds held in the Escrow Account as of the Termination Date.

**10.17**   The Administrator shall file the Final Distribution Report with the District Court for final approval and serve a copy of the Final Distribution Report on counsel of record for the Parties.

**10.18**   Within thirty (30) days after the Reserved Funds End Date, the Administrator shall compile a supplemental report (the "**Supplemental Report**") providing:

  **10.18.1** All information set forth in Article 10.16.1 and Article 10.16.3 for any additional distributions made to a Class Member.

  **10.18.2** The date and amount of the Charity Donation.

**10.19**   The Administrator shall file the Supplemental Report with the District Court for approval and serve a copy of the Supplemental Report on counsel of record for the Parties.

**10.20**   As soon as possible after the District Court approves of the Final Distribution Report and the Supplemental Report, the Administrator shall dissolve the QSF and shall complete and file all necessary tax forms related thereto.

**10.21**   Upon the request of counsel for the Parties, and as soon as practicable after such request, the Administrator shall provide counsel with copies of any data or work product in the possession, custody or control of the Administrator.

**10.22**   There shall be no other deductions, transfers or distributions of any nature whatsoever from the Settlement Fund except for those expressly provided in Article 10, Article 9.9 and Article 6.4 of the Settlement Agreement.

### ARTICLE 11
### Releases

**11.1**   Upon the entry of the Final Judgment and Dismissal Orders, the Parties shall be deemed to have provided irrevocable releases of claims as set forth in this Article 11.

**11.2**   The Plaintiffs, including the Representative Plaintiffs, Gladney Plaintiffs and each Class Member of the WARN Act Class, the FLSA Class and the WPCA Class, and any person or entity that may claim their rights by and through them, including without limitation each of their respective executors, representatives, guardians, heirs, beneficiaries, custodians, predecessors, successors, employees, agents, attorneys and assigns (collectively, the "**Plaintiff Releasing**

Parties") hereby jointly and severally remise, release, extinguish and forever discharge each and every one of the Defendants, including REI, BlueSky, Darden, Elmore, Preston, Tatum and the Individual Defendants, and their respective insurers, parent companies, subsidiary companies, affiliate companies, members, directors, partners, officers, managers, employees, agents, attorneys, representatives, executors, guardians, heirs, beneficiaries, custodians, predecessors, successors and assigns, including but not limited to Reliant Equity Partners, L.P., Reliant Equity Partners, LLC and AB&C (collectively, the "**Released Parties**"), from any and all Claims as well as any and all other claim and claims, action and actions, cause and causes of action, suits, debts, controversies, damages, judgments, executions, claims and demands whatsoever, asserted or unasserted, known or unknown, in law or in equity that any of the Plaintiff Releasing Parties ever had or now have, whether or not presently suspected, contemplated or anticipated, against any of the Released Parties that are directly or indirectly based, arise out of or are related in any way to any acts, omissions, conduct or behavior of any of the Released Parties with respect to the facts and circumstances related to the employment or contractual relationship between any of the Plaintiff Releasing Parties and AB&C, BlueSky, REI, Reliant Equity Partners, L.P., Reliant Equity Partners, LLC or any of the Released Parties (collectively, the "**Plaintiff Released Claims**").

  11.3 Each and every one of the Defendants and any person or entity that may claim their rights by and through them, including without limitation and each of their respective executors, representatives, guardians, heirs, beneficiaries, custodians, predecessors, successors, employees, agents, attorneys, parent companies, subsidiary companies, affiliate companies and assigns (the "**Defendant Releasing Parties**"), hereby jointly and severally remise, release, extinguish and forever discharge each and every one of the Released Parties from any and all

Claims as well as any and all other claim and claims, action and actions, cause and causes of action, suits, debts, controversies, damages, judgments, executions, claims and demands whatsoever, asserted or unasserted, known or unknown, in law or in equity that any of the Defendant Releasing Parties ever had or now have, whether or not presently suspected, contemplated or anticipated, against each and every one of the Released Parties that are directly or indirectly based, arise out of or are related in any way to any acts, omissions, conduct or behavior of any of the Released Parties with respect to the facts and circumstances related to the employment or contractual relationship between or among any of the other Released Parties, except that Darden, Elmore and Preston do not release any claims of any nature whatsoever they ever had, now have or may hereafter have, whether or not presently suspected, contemplated or anticipated, against REI, Reliant Equity Partners, LLC, Reliant Equity Partners, L.P. and their respective parent companies, subsidiary companies and affiliate companies (the "**Defendant Released Claims**" and together with the Plaintiff Released Claims, the "**Released Claims**").

## ARTICLE 12
### Effective Date

12.1     As of the Effective Date, the Settlement Agreement shall become a binding contract between the Parties, supported by consideration, the sufficiency of which is expressly recognized by each Party, and shall inure to the benefit of all of the Parties pursuant to the terms of the Settlement Agreement.

## ARTICLE 13
### Denial of Wrongdoing

13.1     Neither the making of the Settlement Agreement nor any of the terms or conditions contained in the Settlement Agreement shall be construed as any admission whatsoever by any Defendant of any fact alleged or the merits of any Claim asserted in the Lawsuits, Defendants expressly denying all such facts and Claims.

**13.2**    Neither the making of the Settlement Agreement nor any of the terms or conditions contained in the Settlement Agreement shall be construed as any admission whatsoever by any Plaintiff of any fact alleged or the merits of any defense asserted in the Lawsuits, Plaintiffs expressly denying all such facts and defenses.

**13.3**    Neither the making of the Settlement Agreement nor any of the terms or conditions contained in the Settlement Agreement shall be construed as any admission whatsoever by any Party of any tax obligation or liability arising from any of the Claims, the Lawsuits or the Settlement Agreement.

**13.4**    The Settlement Agreement shall not constitute evidence of any violation of law by any Defendant.

**13.5**    Neither the existence of the Settlement Agreement nor its terms and conditions shall be admissible in any other case or controversy except in (a) the Lawsuits and only for purposes of enforcing the terms of the Settlement Agreement in those Lawsuits or (b) any other case or controversy and strictly for purposes of enforcing the Releases provided for in Article 11.

**13.6**    The settlement negotiations leading up to the Settlement Agreement, including rejected offers and demands, shall remain strictly confidential, except that the Parties may agree to use any such information as evidence in support of the fairness of the Settlement Agreement.

### ARTICLE 14
### Duty to Cooperate

**14.1**    The Parties together with counsel for the Parties agree to cooperate and to use their best efforts to effectuate the terms of the Settlement Agreement, including but not limited to:

      **14.1.1** Obtaining entry of the Preliminary Approval Order by the District Court as set forth in Article 5 of the Settlement Agreement.

**14.1.2** Obtaining the entry of the Allocation Order by the District Court as set forth in Article 5 of the Settlement Agreement.

**14.1.3** Obtaining the entry of the Final Approval Order by the District Court as set forth in Article 5 of the Settlement Agreement.

**14.1.4** Obtaining entry of the Final Judgment by the District Court as set forth in Article 8.1 of the Settlement Agreement.

**14.1.5** Obtaining entry of the Coble Dismissal by the Jefferson County Court as set forth in Article 8.2 of the Settlement Agreement.

**14.1.6** Obtaining entry of the Gladney Dismissal by the Jefferson County Court as set forth in Article 8.3 of the Settlement Agreement.

## ARTICLE 15
### Termination Provisions

**15.1**　If for any reason the Settlement Agreement is not approved by the District Court or any other reviewing tribunal and/or the Final Judgment and Dismissal Orders are not entered, then the Settlement Agreement shall be cancelled and terminated and shall not be used in any of the Lawsuits or in any other proceeding for any other purpose and any judgment or orders entered by the District Court or the Jefferson County Court in accordance with the terms of the Settlement Agreement shall be treated as vacated *nunc pro tunc*.

**15.2**　In the event that the Settlement Agreement is cancelled or terminated, the Settlement Fund shall be refunded back to the Defendants as set forth in Article 9.9 of the Settlement Agreement.

**15.3**　In the event that the Settlement Agreement is cancelled or terminated, the Parties shall revert to their respective positions in the Lawsuits as though the Settlement Agreement had never been executed.

## ARTICLE 16
### Notice

**16.1**   Notice to any of the Parties that requested, required or provided by order of the

District Court, the Jefferson County Court or pursuant the terms of the Settlement Agreement

shall be made as set forth below:

### 16.1.1  To Representative Plaintiffs:

David M. Hammer
Hammer, Ferretti & Schiavoni
408 West King Street
Martinsburg, WV  25401

With a copy to:

Garry Geffert
P.O. Box 2281
Martinsburg, WV  25402

### 16.1.2  To Gladney Plaintiffs:

Paul G. Taylor
Law Office of Paul G. Taylor, PLLC
134 W. Burke Street
Martinsburg, WV  25401

With a copy to:

Steven M. Sprenger
Sprenger & Lang
1400 I Street, NW, Suite 500
Washington, D.C.  20005

### 16.1.3  To REI:

David M. Neff
Perkins Coie LLP
131 South Dearborn Street, Suite 1700
Chicago, IL  60603

With a copy to:

Kathy Santa Barbara
Santa Barbara Law Offices, PLLC
518 W. Stephen Street
Martinsburg, WV  25401

**16.1.4  To BlueSky, Darden, Elmore & Preston:**

> Avrum Levicoff
> Levicoff, Silko & Deemer, P.C.
> Centre City Tower, Suite 1900
> 650 Smithfield Street
> Pittsburgh, PA  15222-2911

**16.1.5  To Tatum, LLC:**

> William J. Powell
> Jackson Kelly, PLLC
> 310 West Burke Street
> Martinsburg, WV  25401

**16.1.6  To Individual Defendants:**

> A. Patricia Diulus-Myers
> Jackson Lewis LLP
> 1 PPG Place, 28th Floor
> Pittsburgh, PA  15222

> With a copy to:

> William R. Baldiga
> Brown Rudnick LLP
> One Financial Center
> Boston, MA  02111
> United States of America

> Philip M. Cronin
> Benjamin R. Sigel
> Peabody & Arnold LLP
> Federal Reserve Plaza
> 600 Atlantic Ave.
> Boston, MA 02110

### ARTICLE 17
### Miscellaneous Provisions

**17.1   Publicity.** The Parties agree that any publicity about any of the terms or conditions of the settlement of the Lawsuits generally and the Settlement Agreement in particular will not name any of the Defendants.

**17.2   Voluntary Agreement.** Each of the Parties, including the Class Members, expressly acknowledges that they are entering into the Settlement Agreement voluntarily.

**17.3   Entire Agreement.** The terms of the Settlement Agreement, including the Exhibits attached hereto and incorporated herein, set forth the entire understanding between and among the Parties and supersede all prior and contemporaneous agreements and understandings between and among the Parties with respect to the Lawsuits, and any and all prior correspondence, conversations or memoranda between the Parties are merged herein and are replaced hereby.  The Parties each affirm that, except as set forth in the Settlement Agreement, there have been no representations on behalf of any of the Parties, or counsel to any of the Parties, on which any of the Parties or any Class Member has relied in entering into the Settlement Agreement.

**17.4   Amendment.** The Settlement Agreement may not be altered or amended, except for the entry of the Allocation Order by the District Court pursuant to Article 5.2 or any other written instrument signed by all Parties and approved by order of the District Court.  Any modification to the Settlement Agreement imposed by the District Court or any other court or reviewing authority without the consent of all of the Parties, except for the entry of the Allocation Order, shall constitute termination of the Settlement Agreement as set forth in Article 15 of the Settlement Agreement.

**17.5   Stay of Proceedings.**  As of the Effective Date, all discovery and other proceedings in the Lawsuits shall be stayed pending further order from the District Court, except such proceedings as may be necessary to implement or comply with the terms and conditions of the Settlement Agreement.

**17.6   Jurisdiction.**  The District Court shall have continuing jurisdiction over the implementation, interpretation and enforcement of the Settlement Agreement.  All of the Parties, including each Class Member, hereby submit to the jurisdiction of the District Court for purposes of implementing and enforcing the Settlement Agreement.

**17.7   Survival.**  The promises, agreements, obligations, undertakings, representations and warranties set out herein shall survive entry of the Final Judgment, the Dismissal Orders and the dissolution of the QSF.

**17.8   Governing Law.**  The Settlement Agreement and the Exhibits hereto shall be construed and enforced in accordance with the laws of the State of West Virginia

**17.9   Authority.**  The undersigned are fully authorized to execute and enter into all of the terms and conditions of the Settlement Agreement on behalf of their respective clients, including the Class Members.

**17.10   Separate Counterparts.** The Settlement Agreement may be signed in single or separate counterparts, each of which shall constitute an original and each of which shall be considered executed as of the date and year first above written.  Scanned or faxed signatures shall be binding on all of the Parties.

**Joseph Nolan, Eric Woomer, Carla Coble, Stephanie Laing, Poppy Chrisman, the WARN Act Class, the FLSA Class and the WPCA Class**

By: _____ 12/15/10

   David M. Hammer
   Hammer, Ferretti & Schiavoni
   408 West King Street
   Martinsburg, WV 25401

**Reliant Equity Investors, LLC**

By: _____
   David M. Neff
   Perkins Coie LLP
   131 South Dearborn Street, Suite 1700
   Chicago, IL  60603

**Tatum, LLC**

By: _____
   William J. Powell
   Jackson Kelly, PLLC
   310 West Burke Street
   Martinsburg, WV 25401

**Josetta Gladney, Cheryl Wilfong, Ruth Johnson, Amy Cawthorn and David McCauley**

By: _____
   Paul G. Taylor
   Law Office of Paul G. Taylor, PLLC
   134 W. Burke Street
   Martinsburg, WV 25401

**BlueSky Brands, Inc., Thomas Darden, Jr., Qian Elmore and Carr Preston**

By: _____
   Avrum Levicoff
   Levicoff, Silko & Deemer, P.C.
   Centre City Tower, Suite 1900
   650 Smithfield Street
   Pittsburgh, PA  15222-2911

**Robert Pulciani, Philip Wax, Christopher Stevens, Larry Morgan, Cathy Jo Van Pelt, Kimberly Myers, Ed Coleman, Michael Lutz, Richard Hebert and Larry Muzzy**

By: _____
   A. Patricia Diulus-Myers
   Jackson Lewis LLP
   1 PPG Place, 28th Floor
   Pittsburgh, PA  15222

**17.10  Separate Counterparts.**  The Settlement Agreement may be signed in single or separate counterparts, each of which shall constitute an original and each of which shall be considered executed as of the date and year first above written.  Scanned or faxed signatures shall be binding on all of the Parties.

**Joseph Nolan, Eric Woomer, Carla Coble, Stephanie Laing, Poppy Chrisman, the WARN Act Class, the FLSA Class and the WPCA Class**

By:_____
   David M. Hammer
   Hammer, Ferretti & Schiavoni
   408 West King Street
   Martinsburg, WV 25401

**Reliant Equity Investors, LLC**

By:_____
   David M. Neff
   Perkins Coie LLP
   131 South Dearborn Street, Suite 1700
   Chicago, IL  60603

**Tatum, LLC**

By:_____
   William J. Powell
   Jackson Kelly, PLLC
   310 West Burke Street
   Martinsburg, WV  25401

**Josetta Gladney, Cheryl Wilfong, Ruth Johnson, Amy Cawthorn and David McCauley**

By:_____
   Paul G. Taylor
   Law Office of Paul G. Taylor, PLLC
   134 W. Burke Street
   Martinsburg, WV 25401

**BlueSky Brands, Inc., Thomas Darden, Jr., Qian Elmore and Carr Preston**

By:_____
   Avrum Levicoff
   Levicoff, Silko & Deemer, P.C.
   Centre City Tower, Suite 1900
   650 Smithfield Street
   Pittsburgh, PA 15222-2911

**Robert Pulciani, Philip Wax, Christopher Stevens, Larry Morgan, Cathy Jo Van Pelt, Kimberly Myers, Ed Coleman, Michael Lutz, Richard Hebert and Larry Muzzy**

By:_____
   A. Patricia Diulus-Myers
   Jackson Lewis LLP
   1 PPG Place, 28th Floor
   Pittsburgh, PA  15222

**17.10  Separate Counterparts.**  The Settlement Agreement may be signed in single or separate counterparts, each of which shall constitute an original and each of which shall be considered executed as of the date and year first above written.  Scanned or faxed signatures shall be binding on all of the Parties.

**Joseph Nolan, Eric Woomer, Carla Coble, Stephanie Laing, Poppy Chrisman, the WARN Act Class, the FLSA Class and the WPCA Class**

By:_____
     David M. Hammer
     Hammer, Ferretti & Schiavoni
     408 West King Street
     Martinsburg, WV  25401

**Reliant Equity Investors, LLC**

By:_____
     David M. Neff
     Perkins Coie LLP
     131 South Dearborn Street, Suite 1700
     Chicago, IL  60603

**Tatum, LLC**

By:_____
     William J. Powell
     Jackson Kelly, PLLC
     310 West Burke Street
     Martinsburg, WV  25401

**Josetta Gladney, Cheryl Wilfong, Ruth Johnson, Amy Cawthorn and David McCauley**

By:_____
     Paul G. Taylor
     Law Office of Paul G. Taylor, PLLC
     134 W. Burke Street
     Martinsburg, WV  25401

**BlueSky Brands, Inc., Thomas Darden, Jr., Qian Elmore and Carr Preston**

By:_____
     Avrum Levicoff
     Levicoff, Silko & Deemer, P.C.
     Centre City Tower, Suite 1900
     650 Smithfield Street
     Pittsburgh, PA  15222-2911

**Robert Pulciani, Philip Wax, Christopher Stevens, Larry Morgan, Cathy Jo Van Pelt, Kimberly Myers, Ed Coleman, Michael Lutz, Richard Hebert and Larry Muzzy**

By:_____
     A. Patricia Diulus-Myers
     Jackson Lewis LLP
     1 PPG Place, 28th Floor
     Pittsburgh, PA  15222

91004-0040/LEGAL19629821.2                    28

**17.10  Separate Counterparts.**  The Settlement Agreement may be signed in single or separate counterparts, each of which shall constitute an original and each of which shall be considered executed as of the date and year first above written.  Scanned or faxed signatures shall be binding on all of the Parties.

**Joseph Nolan, Eric Woomer, Carla Coble, Stephanie Laing, Poppy Chrisman, the WARN Act Class, the FLSA Class and the WPCA Class**

By:_____
    David M. Hammer
    Hammer, Ferretti & Schiavoni
    408 West King Street
    Martinsburg, WV  25401

**Reliant Equity Investors, LLC**

By:_____
    David M. Neff
    Perkins Coie LLP
    131 South Dearborn Street, Suite 1700
    Chicago, IL  60603

**Tatum, LLC**

By:_____
    William J. Powell
    Jackson Kelly, PLLC
    310 West Burke Street
    Martinsburg, WV  25401

**Josetta Gladney, Cheryl Wilfong, Ruth Johnson, Amy Cawthorn and David McCauley**

By:_____
    Paul G. Taylor
    Law Office of Paul G. Taylor, PLLC
    134 W. Burke Street
    Martinsburg, WV  25401

**BlueSky Brands, Inc., Thomas Darden, Jr., Qian Elmore and Carr Preston**

By:_____
    Avrum Levicoff
    Levicoff, Silko & Deemer, P.C.
    Centre City Tower, Suite 1900
    650 Smithfield Street
    Pittsburgh, PA  15222-2911

**Robert Pulciani, Philip Wax, Christopher Stevens, Larry Morgan, Cathy Jo Van Pelt, Kimberly Myers, Ed Coleman, Michael Lutz, Richard Hebert and Larry Muzzy**

By:_____
    A. Patricia Diulus-Myers
    Jackson Lewis LLP
    1 PPG Place, 28th Floor
    Pittsburgh, PA  15222

**17.10  Separate Counterparts.**  The Settlement Agreement may be signed in single or separate counterparts, each of which shall constitute an original and each of which shall be considered executed as of the date and year first above written.  Scanned or faxed signatures shall be binding on all of the Parties.

**Joseph Nolan, Eric Woomer, Carla Coble, Stephanie Laing, Poppy Chrisman, the WARN Act Class, the FLSA Class and the WPCA Class**

By:_____
    David M. Hammer
    Hammer, Ferretti & Schiavoni
    408 West King Street
    Martinsburg, WV  25401

**Josetta Gladney, Cheryl Wilfong, Ruth Johnson, Amy Cawthorn and David McCauley**

By:_____
    Paul G. Taylor
    Law Office of Paul G. Taylor, PLLC
    134 W. Burke Street
    Martinsburg, WV  25401

**Reliant Equity Investors, LLC**

By:_____
    David M. Neff
    Perkins Coie LLP
    131 South Dearborn Street, Suite 1700
    Chicago, IL  60603

**BlueSky Brands, Inc., Thomas Darden, Jr., Qian Elmore and Carr Preston**

By:_____
    Avrum Levicoff
    Levicoff, Silko & Deemer, P.C.
    Centre City Tower, Suite 1900
    650 Smithfield Street
    Pittsburgh, PA  15222-2911

**Tatum, LLC**

By:_____
    William J. Powell
    Jackson Kelly, PLLC
    310 West Burke Street
    Martinsburg, WV  25401

**Robert Pulciani, Philip Wax, Christopher Stevens, Larry Morgan, Cathy Jo Van Pelt, Kimberly Myers, Ed Coleman, Michael Lutz, Richard Hebert and Larry Muzzy**

By:_____
    A. Patricia Diulus-Myers
    Jackson Lewis LLP
    1 PPG Place, 28th Floor
    Pittsburgh, PA  15222

**17.10 Separate Counterparts.** The Settlement Agreement may be signed in single or separate counterparts, each of which shall constitute an original and each of which shall be considered executed as of the date and year first above written. Scanned or faxed signatures shall be binding on all of the Parties.

Joseph Nolan, Eric Woomer, Carla Coble, Stephanie Laing, Poppy Chrisman, the WARN Act Class, the FLSA Class and the WPCA Class

By:_____
    David M. Hammer
    Hammer, Ferretti & Schiavoni
    408 West King Street
    Martinsburg, WV 25401

Reliant Equity Investors, LLC

By:_____
    David M. Neff
    Perkins Coie LLP
    131 South Dearborn Street, Suite 1700
    Chicago, IL 60603

Tatum, LLC

By:_____
    William J. Powell
    Jackson Kelly, PLLC
    310 West Burke Street
    Martinsburg, WV 25401

Josetta Gladney, Cheryl Wilfong, Ruth Johnson, Amy Cawthorn, David McCauley and numerous other individual Class Members *and FLSA opt-in Plaintiffs*

By:_____ 12/17/10
    Paul G. Taylor
    Law Office of Paul G. Taylor, PLLC
    134 W. Burke Street
    Martinsburg, WV 25401

BlueSky Brands, Inc., Thomas Darden, Jr., Qian Elmore and Carr Preston

By:_____
    Avrum Levicoff
    Levicoff, Silko & Deemer, P.C.
    Centre City Tower, Suite 1900
    650 Smithfield Street
    Pittsburgh, PA 15222-2911

Robert Pulciani, Philip Wax, Christopher Stevens, Larry Morgan, Cathy Jo Van Pelt, Kimberly Myers, Ed Coleman, Michael Lutz, Richard Hebert and Larry Muzzy

By:_____
    A. Patricia Diulus-Myers
    Jackson Lewis LLP
    1 PPG Place, 28th Floor
    Pittsburgh, PA 15222